# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs December 7, 2011

## STATE OF TENNESSEE v. MARVIN CHRISTOPHER LONG, DESMOND SHELTON SPANN, and DONTILLUS WILLIAMS

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2008-D-3274      Monte Watkins, Judge**

_____

**No. M2010-01491-CCA-R3-CD - Filed August 22, 2012**

_____

Defendants, Marvin Christopher Long, Desmond Shelton Spann, and Dontillus Williams, were indicted by the Davidson County Grand Jury for possession with intent to deliver 300 grams or more of cocaine within 1,000 feet of a school and for conspiracy of the same offense, both Class A felonies. Following a jury trial, all three defendants were convicted as charged. Defendant Long was sentenced by the trial court as a career offender to 60 years' incarceration for each conviction with his sentences to be served concurrently; Defendant Spann was sentenced as a multiple offender to 25 years' incarceration for each conviction with his sentences to be served concurrently; and Defendant Williams was sentenced as a persistent offender to 40 years' incarceration with his sentences to be served concurrently. Defendants appeal and assert the following: 1) Defendant Long challenges the sufficiency of the convicting evidence and the trial court's classification of him as a career offender; 2) Defendant Spann challenges the trial court's jury verdict form regarding the schedule of the controlled substance, challenges the trial court's instructions as to lesser-included offenses, and argues the trial court erred when it failed to instruct the jury regarding the weight of the controlled substance; and 3) Defendant Williams challenges the trial court's denial of his motion to suppress evidence. After a careful review of the record before us, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and D. KELLY THOMAS, JR., JJ., joined.

Shawn P. Sirgo, Nashville, Tennessee, (on appeal); and Matthew Mayo, Nashville, Tennessee, (at trial), for the appellant, Marvin Christopher Long. Brian T. Jackson, Nashville, Tennessee, for the appellant, Desmond Shelton Spann. Dawn Deaner, District

Public Defender; Emma Rae Tennent, Assistant Public Defender; Melissa Harrison, Assistant Public Defender; and Katie Weiss, Assistant Public Defender, Nashville, Tennessee, for the appellant, Dontillus Williams.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; John Zimmerman, Assistant District Attorney General; and Leticia Alexander, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Suppression hearing*

Agent Corey Currie of the Twenty-first Judicial Drug Task Force testified that on August 11, 2008, he was parked in the median of Interstate 40 (I-40), close to the 155 mile-marker, monitoring eastbound traffic. He was in a marked police vehicle and parked in a position that was "clearly visible" to oncoming traffic. He observed a blue Kia SUV approach and slow to a speed of 68 miles per hour, according to his radar. Agent Currie believed the driver's behavior was inconsistent with that of other motorists in that the driver "had his hands on the steering wheel at a ten-two position and was staring straight ahead." Agent Currie pulled onto the interstate and followed the vehicle. As he approached the vehicle, he could not read the state of issuance on the license plate because it was covered by a "black tag frame." Agent Currie then activated his emergency lights, and the driver stopped the vehicle. Agent Currie approached the passenger side of the vehicle and asked the driver for his driver's license. The driver produced a driver's license, identifying him as "Jerry Springfield," which Agent Currie testified he later discovered was a false ID. Agent Currie asked the driver to step out of the vehicle and led the driver to the back of the vehicle to show him the reason for the stop. At that time, Agent Currie also noticed that the taillight was broken.

Agent Currie testified that there were three occupants in the vehicle. Defendant Long was the driver of the vehicle, Defendant Williams was the rear seat passenger, and Defendant Spann was the front seat passenger. Defendant Long stated that the vehicle belonged to his uncle Tony Long and that they were driving to Nashville from Jackson. Agent Currie testified that "[a]s soon as [he] walked up to the vehicle[, he] immediately recognized the odor of marijuana coming from the vehicle." He asked if anyone had been smoking marijuana, and Defendant Long stated that they had not. He asked what the odor was, and Defendant Long "hesitated, or took a long pause, and basically didn't answer the question."

-2-

Agent Currie went to the passenger side of the vehicle and asked Defendant Spann for the vehicle registration and insurance, which Defendant Spann handed to Agent Currie. Agent Currie then asked for Defendant Spann's identification, which he produced. Agent Currie also asked Defendant Williams for identification, and Defendant Williams produced identification for "Dwayne Bowles." Agent Currie ran a computer check on the vehicle and the occupants and learned that two of the individuals whose identifications were given to him had criminal histories for possession of cocaine.

Agent Currie radioed his partner Agent Daugherty, who arrived to assist Agent Currie. Agent Currie patted down Defendant Long and advised him that they were going to search the vehicle. Defendant Long stated that he did not give his consent to search the vehicle, and Agent Currie "advised him that [they] did not need consent due to the odor coming from the vehicle[,] [a]nd [Long] said, 'Okay, do your thing.'"

Defendant Long sat in the backseat of Agent Currie's vehicle. Agent Currie then asked Defendant Spann to exit the vehicle and asked if they had been smoking marijuana. Defendant Spann admitted that they had "smoked a joint" in Jackson before they left. Defendant Williams also admitted that they had smoked marijuana before they left Jackson. Agent Currie patted down Defendant Williams and then asked him to take off his shoes. Defendant Williams took off his shoes, and Agent Currie observed "large amounts of currency in his shoes." Defendant Williams stated that the money was for shopping. Agent Currie found "a small leftover marijuana cigarette," which he instructed the defendants to destroy on the roadway. He also found a small, plastic digital scale with cocaine residue between the front passenger seat and the center console of the vehicle. Agent Currie testified that the defendants were cooperative and did not have any weapons.

Agent Currie testified that Agent Daugherty called Agent Justin Fox. Agent Fox advised that if the defendants were released, he would "take over surveillance" of the vehicle after it entered Nashville. Agents Currie and Daugherty "released" the vehicle and maintained "loose tail" surveillance.

Agent Justin Fox, a detective of the Metropolitan Nashville Police Department, who was assigned to the Twentieth Judicial Drug Task Force, testified that after speaking to Agent Daugherty, he drove to the Davidson County line on I-40 at the McCrory Lane exit. He observed the defendants' vehicle traveling east on I-40 and followed it to Swett's Restaurant, where they arrived at 4:35 p.m. The defendants parked behind the restaurant, away from the customer parking lot, and Agent Fox observed the defendants enter the building. The defendants returned to the vehicle "a short time later," and Defendants Williams and Long got out of the vehicle again and went back inside the restaurant. At 4:51 p.m., a green Dodge Charger with a temporary tag parked beside the driver's side of the

defendants' vehicle.  There were two occupants inside the Dodge Charger.  The driver, a black male, got into the defendants' vehicle with Defendant Spann.  Defendants Williams and Long then came out of the restaurant again and got into their vehicle with Defendant Spann and the driver of the green Dodge Charger.  "[A] minute later," the black male got out of the defendants' vehicle and drove away in the Dodge Charger.  Defendants then drove around to the front of the building.  All three defendants entered the restaurant and "immediately" came back out.  They drove across the street to a store.  Defendant Long went inside the store.  When he returned to the vehicle, the defendants left with Defendant Spann driving, Defendant Williams in the front passenger seat, and Defendant Long in the backseat.

The defendants entered I-40 and drove west toward Jackson.  Agent Fox noticed that the vehicle had a taillight out.  Patrol officer Taylor Schmitz stopped the vehicle on I-40 at the Old Hickory Boulevard exit.  Agent Fox stopped also.  Officer Schmitz told Agent Fox that he smelled marijuana when he approached the vehicle and that he observed a set of digital scales in the rear floorboard.  Agent Fox asked Officer Schmitz to have the driver step behind the vehicle so Agent Fox could speak to him.  Agent Fox asked Defendant Spann if he had any large amounts of money or drugs on his person.  Defendant Spann responded that he had already been searched and he "only had about three hundred bucks."  With Defendant Spann's consent, Agent Fox searched him and did not find anything.  Defendant Spann stated that the vehicle belonged to Defendant Long's uncle and that they had been shopping in Nashville.

Agent Fox then asked Defendant Long to exit the vehicle.  Defendant Long identified himself to Agent Fox as Jerry Springfield.  Defendant Long stated that the vehicle belonged to his uncle and that they had taken his aunt to eat at Swett's Restaurant.  Defendant Long denied that he had any large amounts of cash, guns, or drugs on his person or in the vehicle, and he gave Agent Fox consent to search him.  Agent Fox searched Defendant Long and did not find anything on Defendant Long's person.  Agent Fox then asked Defendant Long for consent to search the vehicle, and Defendant Long refused consent because he was "tired of getting harassed."

Defendant Williams was then asked to exit the vehicle and patted down by Officer Schmitz.  Agent Fox asked Defendant Williams if he had any money, and Defendant Williams stated that he had thirty dollars.  Agent Fox testified that Defendant Williams appeared to be "a little nervous."  Defendant Long then approached Agent Fox and gave his consent to search the vehicle.  Defendant Long executed a written consent form, signing as Jerry Springfield.  Agent Fox approached the vehicle and smelled "a strong odor of marijuana."  Agent Fox recovered digital scales, which were covered in a white residue, and a pack of rolling papers from the rear floorboard.  Agent Fox did not recover any drugs or large amounts of cash. Defendant Williams denied any knowledge of the drug paraphernalia.

-4-

Agent Fox asked Defendant Williams to move his leg "in order to lift him off the ground because he was cuffed," and Defendant Williams refused. Agent Fox testified that he and Officer Thomas had to physically help him off the ground, and Agent Fox moved Defendant Williams' legs apart with his foot. Agent Fox found a plastic bag containing twelve ounces of cocaine inside Defendant Williams' pants.

*Trial*

On August 11, 2008, Agent Currie observed a blue Kia SUV traveling westbound on I-40. He noticed that the driver appeared "stiff or rigid," the license plate was partially covered by a tag frame, and the vehicle had a broken taillight. Agent Currie followed the vehicle and observed a black plastic tag frame that partially obscured the license plate. He then stopped the vehicle. He approached the vehicle and asked the driver for his driver's license, and Defendant Long produced a driver's license falsely identifying him as Jerry Springfield. Agent Currie asked him to exit the vehicle and showed him the license plate. Defendant Long stated that he was traveling to Nashville from Jackson and that the vehicle belonged to his uncle. Agent Currie testified that he smelled an odor of marijuana when he approached the vehicle. He asked Defendant Long about it, and Defendant Long did not respond.

Defendant Williams was seated in the front passenger seat. When asked to provide identification, he also provided false identification to Agent Currie. Defendant Williams stated that they were going shopping in Nashville. The rear passenger, Defendant Spann, provided his identification to Agent Currie. Agent Currie radioed his partner, Agent Daugherty, who arrived to assist him. Agent Currie decided to search the vehicle. He first patted down the defendants. While Agent Currie was patting down Defendant Long, Agent Daugherty observed Defendants Williams and Spann make a hand to hand exchange. Agent Currie found approximately $4,000 in cash in Defendant Spann's shoes. He testified that he had previously confused Defendants Williams and Spann at the suppression hearing. Inside the vehicle, Agent Currie found a "leftover marijuana cigarette" and a digital scale with white residue on it.

Agent Currie then contacted other agents and decided to release the vehicle but maintain surveillance of the vehicle. Agent Fox established surveillance of the defendants' vehicle at mile marker 192 on I-40 eastbound. He followed the vehicle to Swett's Restaurant, where the defendants pulled around to the back of the building and parked away from the customer parking lot at 4:35 p.m. Defendants Williams and Long went inside the restaurant and "immediately came back out." Then all three defendants went inside the restaurant and came outside "a short time later." Defendants Williams and Long went back inside the restaurant, and Defendant Spann stayed in the vehicle. At that time, a green Dodge

Charger parked beside the defendants' vehicle. The driver of the Dodge Charger, a black male, got inside the defendants' vehicle with Defendant Spann. Defendants Williams and Long then came out of the restaurant and got inside the vehicle with Defendant Spann and the driver of the Dodge Charger. "[S]econds" later, the black male got back into the Dodge Charger and drove away. At 4:56 p.m., the defendants drove around to the front of the building and went inside the restaurant. They returned to the vehicle with "to-go" boxes and left with Defendant Spann driving, Defendant Williams seated in the front passenger seat, and Defendant Long seated in the backseat.

After the defendants left the restaurant, the drove across the street to a gas station. After leaving the gas station, the defendants drove westbound on I-40. Agent Fox directed patrol officer Taylor Schmitz to stop the vehicle for a traffic violation based on the broken taillight and obstructed license plate. After Officer Schmitz stopped the vehicle, Agent Fox spoke to Defendant Spann. Defendant Spann stated that the vehicle belonged to Defendant Long's uncle and that they had taken Defendant Long's aunt shopping and to dinner. Agent Fox then spoke to Defendant Long, who also stated that he had borrowed the vehicle from his uncle and that they had taken his aunt to eat at Swetts Restaurant. Agent Fox searched both Defendant Long and Defendant Spann and found no contraband or large amounts of cash. Agent Fox then spoke to Defendant Williams, who stated that they had driven Defendant Long's aunt to Nashville. After initially refusing consent to search the vehicle, Defendant Long gave Agent Fox consent to search the vehicle. Defendant Long signed the written consent form using the name "Jerry T. Springfield," which was the name on the driver's license he produced.

When Agent Fox approached the vehicle, he smelled "a strong odor of marijuana coming from the vehicle." From the back floorboard, he recovered digital scales with white residue that tested positive for cocaine. He also recovered a pack of rolling papers. All three defendants were then handcuffed and placed into custody. Agent Fox asked Defendant Williams, who was sitting on the ground, to stand up, and Defendant Williams would not move his legs apart. Agent Fox patted down Defendant Williams and found two bags containing 334 grams, or approximately 12 ounces, of cocaine.

David Kline, of the Metro Mapping and Planning Department, testified that the parking lot behind Swetts Restaurant is 135 feet from McKissack Park and 595 feet from Pearl Cohn Comprehensive High School. He also testified that on the date of the stop, the location on I-40 at which Officer Schmitz stopped the defendants' vehicle was 775 feet from Gower Elementary School and 214 feet from Brookmeade Elementary School. Steve Keel, Director of School Security for Metro-Nashville Public Schools, testified that all three of these schools were in session on August 11, 2008.

The defendants did not testify at trial or present any other evidence.

*Analysis*

**I. Defendant Williams' motion to suppress**

The sole issue raised by Defendant Williams in this appeal is whether the trial court erred in denying his motion to suppress evidence obtained as a result of the second traffic stop by Officer Schmitz. Defendant argues that Officer Schmitz lacked reasonable suspicion to instigate the stop of the defendants' vehicle.

In reviewing a trial court's determinations regarding a suppression hearing, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id*. Nevertheless, appellate courts will review the trial court's application of law to the facts purely de novo. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001). Furthermore, the State, as the prevailing party, is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *Odom*, 928 S.W.2d at 23.

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect citizens against unreasonable searches and seizures. Generally, a warrantless search is presumptively unreasonable and thus violates constitutional protections. *See State v. Walker*, 12 S.W.3d 460, 467 (Tenn. 2000). Evidence derived from such a search is subject to suppression unless the State "demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to an exception to the warrant requirement." *State v. Keith*, 978 S.W.2d 861, 865 (Tenn. 1998). One such exception occurs when a police officer conducts a stop of an automobile based upon a reasonable suspicion or probable cause to believe that a traffic violation has occurred. *State v. Vineyard*, 958 S.W.2d 730, 734 (Tenn. 1997). Regarding reasonable suspicion, our supreme court recently explained,

> Reasonable suspicion exists when "specific and articulable facts . . . taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 [88 S. Ct. 1868, 20 L. Ed. 2d 889] (1968). An investigatory traffic stop under *Terry* "is a far more minimal intrusion [than an arrest pursuant to probable cause], simply allowing the officer to briefly investigate further. If the officer does not learn facts rising

to the level of probable cause, the individual must be allowed to go on his way." *Illinois v. Wardlow*, 528 U.S. 119, 126 [120 S. Ct. 673, 145 L. Ed. 2d 570] (2000). However, officers must have some reasonable basis to warrant investigation; a mere "inchoate and unparticularized suspicion or 'hunch'" is not enough to generate reasonable suspicion. *Terry v. Ohio*, 392 U.S. at 27.

*State v. Brotherton*, 323 S.W.3d 866, 870 (Tenn. 2010).

In *Brotherton*, a highway patrol officer stopped the defendant for driving a car with a broken taillight in violation of Tennessee Code Annotated section 55–9–402. *Id*. at 868. The taillight had been repaired with red taillight tape. *Id*. at 869. The defendant filed a motion to suppress evidence on the basis that the trooper lacked reasonable suspicion for the stop. *Id*. at 868. In concluding that the trooper had a reasonable suspicion to stop the defendant's vehicle, the Tennessee Supreme Court stated,

A showing of reasonable suspicion does not require an actual violation of the law because *Terry* "accepts the risk that officers may stop innocent people" to investigate further. *Illinois v. Wardlow*, 528 U.S. 119 at 126. Thus, the proper inquiry should have been whether Trooper Sullivan had an "articulable and reasonable suspicion" that Mr. Brotherton's taillight violated Tenn. Code Ann. § 55–9–402, not whether Mr. Brotherton's taillight, in fact, violated Tenn. Code Ann. § 55–9–402.

*Id*. at 871 (citations omitted).

Defendant Williams distinguishes the facts in *Brotherton* and argues that the traffic stop in this case occurred during daylight hours, and that "the record is devoid of any proof that Officer Schmitz observed a traffic violation or had sufficient reasonable suspicion that a traffic violation had occurred" prior to initiating the stop.

In his brief, Defendant Williams states, "[n]either Currie nor Fox testified that the taillight, while clearly not in mint condition, operated in such a manner as to render it non-compliant under T.C.A. § 55-9-402 at the time it was stopped." Defendant acknowledges that reasonable suspicion "does not require an actual violation of the law." *Brotherton*, 323 S.W.3d at 871. Defendant argues, however, citing *State v. Keith*, 978 S.W.2d at 867, that the basis on which Officer Schmitz stopped the defendants' vehicle fails to satisfy "some minimal level of objective justification." We disagree.

In its order denying Defendant Williams' motion to suppress, the trial court found that Detective Fox had notified patrol officer Schmitz to make a traffic stop of the vehicle in which Defendant was a passenger because the vehicle had a broken taillight. Officer Schmitz subsequently stopped the vehicle. Officer Schmitz testified that he stopped the vehicle because "[t]he right rear taillight was broken out." Officer Schmitz issued the driver a citation for the traffic violation. Agents Currie and Fox also observed the broken taillight prior to Officer Schmitz's stop of the vehicle.

Furthermore, the State asserts that, although the trial court based its ruling only on the broken taillight, officers in this case also had a reasonable suspicion that the defendants had engaged in drug activity. We agree. Agent Currie testified that after he stopped the defendants, he smelled marijuana coming from the vehicle, he observed a partially smoked marijuana cigarette and digital scales inside the vehicle, and he found a large amount of cash in Defendant Spann's shoe. The defendants told Agents Currie and Fox that they were going to Nashville to go shopping and to take Defendant Long's aunt to dinner; however, based on Agent Fox's observations, that story was false. Agent Fox observed the defendants park in a private area behind Swett's Restaurant, where they met briefly with another individual, then left.

Based on the testimony at the suppression hearing of the officers' observations, we conclude that the evidence does not preponderate against the trial court's finding that the stop of the vehicle was based on reasonable suspicion. Defendant is not entitled to relief on this issue.

## II. Jury instruction errors raised by Defendant Spann

Defendant Spann asserts on appeal that the trial court erred by: 1) failing to instruct the jury as to the lesser-included offenses of possession of cocaine with intent to sell or deliver outside of a school zone or facilitation of such offense; and 2) failing to indicate the schedule and weight of the controlled substance on the jury verdict form. The State responds that Defendant has waived both of these issues by failing to request the instructions and by failing to assert or establish plain error in the trial court.

Tennessee Code Annotated section 40-18-110, in pertinent part, provides:

> (b) In the absence of a written request from a party specifically identifying the particular lesser included offense or offenses on which a jury instruction is sought, the trial judge may charge the jury on any lesser included offense or offenses, but no party shall be entitled to any such charge.

(c) Notwithstanding any other provision of law to the contrary, when the defendant fails to request the instruction of a lesser included offense as required by this section, such instruction is waived. Absent a written request, the failure of a trial judge to instruct the jury on any lesser included offense may not be presented as a ground for relief either in a motion for new trial or on appeal.

In *State v. Page*, 184 S.W.3d 223 (Tenn.2006), the Tennessee Supreme Court determined that Tennessee Code Annotated section 40-18-110 was constitutional, concluding that "if a defendant fails to request an instruction on a lesser-included offense in writing at trial, the issue will be waived for purposes of plenary appellate review and cannot be cited as error in a motion for new trial or on appeal." *Page*, 184 S.W.3d at 229. "Tennessee Code [Annotated] section 40-18-110(c) does not violate a defendant's right to trial by jury." *Id*. at 231. Therefore, we conclude that the issue is waived. However, our supreme court also made clear that when a jury instruction is waived for failure to request it in writing, an appellate court may still review the issue for plain error. *Id*. at 230.

Having reviewed the record before us, there is nothing to suggest that the trial court committed plain error by not instructing the jury as to possession of cocaine with intent to sell or deliver not in a school zone or facilitation of such. Particularly, the Drug-Free School Zone Act does not create a separate criminal offense for manufacturing, delivering, selling, or possessing a controlled substance in a school zone; "it merely imposes a harsher penalty for violations of Tenn. Code Ann. § 39-17-417 occurring within a school zone." *State v. Smith*, 48 S.W.3d 159, 168 (Tenn. Crim. App. 2000). Therefore, possession of cocaine with the intent to sell or deliver, or facilitation of such, is the same offense whether it occurs within 1,000 feet of a school or not. Moreover, the evidence at trial was uncontroverted that the offense occurred within 1,000 feet of a school. Defendant is not entitled to relief on this issue.

Defendant also asserts that the trial court erred by failing to instruct the jury to indicate on the jury verdict form the weight of the controlled substance. The State again responds that Defendant has waived this issue by failing to request such instruction. Tennessee Rule of Appellate Procedure 36(b) states, "Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."

The trial court instructed the jury as follows:

For the State to prove the defendants guilty of [possession of cocaine with the intent to sell or deliver], the State must have proven beyond a reasonable doubt the existence of the following essential elements:

(1) the defendants knowingly possessed three hundred grams or more of a substance containing cocaine, a Schedule II controlled substance; and

. . . .

Tennessee Code Annotated section 39-17-417(j)(5) states that a violation of subsection (a)(4), making it an offense to knowingly possess a controlled substance with intent to manufacture, deliver or sell the controlled substance, is a Class A felony if the controlled substance is "[t]hree hundred (300) grams or more of any substance containing cocaine[.]" Defendant complains that the trial court did not use the exact language of Tennessee Pattern Jury Instruction 31.13, entitled "Fixing Weight," and Defendant suggests the following instruction regarding the weight of the controlled substance:

If you find the defendant guilty of [_____] beyond a reasonable doubt, you must go further and fix the range of weight of the controlled substance.

The state has the burden of proving this weight beyond a reasonable doubt. The jury will fix the weight of the controlled substance [manufactured] [delivered] [sold] [possessed] along with its verdict by indicating which of the following ranges the weight falls within[.]

We determine that the trial court's instruction to the jury was proper and did not mislead the jury as to the applicable law. *See State v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997). The instruction fairly states the elements of the crime as found in Tennessee Code Annotated section 39-17-417(j)(5). *See State v. Lewis Bernard Williams*, No. W2005-00446-CCA-R3-CD, 2005 WL 3343793, at *4-5 (Tenn. Crim. App. at Jackson, filed Dec. 8, 2005), *perm. app. denied* (Tenn. June 26, 2006).

Finally, Defendant asserts that the trial court did not provide the jury with proper verdict forms requiring the jury to set the weight of the drugs, and that the trial court erred by failing to indicate on the jury verdict form the schedule of the controlled substance. Defendant argues that it was plain error for the trial court not to delineate between cocaine, a Schedule II controlled substance, and marijuana, a Schedule VI controlled substance, because there was proof at trial of the defendants having been in possession of both drugs;

-11-

therefore, Defendant contends, it is unclear which controlled substance the jury found Defendant guilty of possessing.

The record before us is not adequate to make that determination. *See* Tenn. R. App. P. 24(b). The transcript of the proceedings includes the trial court's oral instructions to the jury; however, the record does not contain the jury's verdict forms. Regardless of Defendant's failure to include the actual jury verdict forms in the record, we note that Defendant did not request a jury instruction on a lesser included offense of possession a smaller amount of cocaine, nor did the trial court give such an instruction, and Defendant does not dispute that the amount of cocaine involved was more than 300 grams. Furthermore, the indictment charged Defendant with possession of cocaine, not marijuana. The only schedule of controlled substance for which Defendant was charged is cocaine. Defendant is not entitled to relief on this issue.

## III. Sufficiency of the evidence to sustain Defendant Long's convictions

Defendant Long asserts on appeal that the evidence at trial was insufficient to support his convictions. Specifically, Defendant Long asserts that the State failed to prove beyond a reasonable doubt that he had actual or constructive possession of the drugs; that he is guilty of conspiracy; and that the offense took place within 1,000 feet of a school zone.

When the sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190–92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973), *abrogated by rule as stated in State v. Moats*, 906 S.W.2d 431 (Tenn. 1995). Our supreme court stated the rationale for this rule:

This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 212 Tenn. 464, 370 S.W.2d 523 (Tenn. 1963)).

"A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn.1982).

Defendant Long was convicted by a jury of possession with intent to deliver more than 300 grams of cocaine within 1,000 feet of a school and conspiracy to possess with intent to deliver more than 300 grams of cocaine within 1,000 feet of a school. "It is an offense for a defendant to knowingly . . . [p]ossess a controlled substance with intent to manufacture, deliver or sell the controlled substance." Tenn. Code Ann. § 39–17–417(a)(2), (4) (2006). The term "possession" encompasses both actual and constructive possession. *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). In order for a person to "constructively possess" a drug, that person must have "'the power and intention at a given time to exercise dominion and control over . . . [the drugs] either directly or through others.'" *Id*. (quoting *State v. Williams*, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981)). Additionally, "it may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." Tenn. Code Ann. § 39–17–419.

Code section 39-12-103 provides:

(a) The offense of conspiracy is committed if two (2) or more people, each having the culpable mental state required for the offense that is the object of the conspiracy, and each acting for the purpose of promoting or facilitating commission of an offense, agree that one (1) or more of them will engage in conduct that constitutes the offense.

(b) If a person guilty of conspiracy, as defined in subsection (a), knows that another with whom the person conspires to commit an offense has conspired with one (1) or more other people to commit the same offense, the person is guilty of conspiring with the other person or persons, whether or not their identity is known, to commit the offense.

(c) If a person conspires to commit a number of offenses, the person is guilty of only one (1) conspiracy, so long as the multiple offenses are the object of the same agreement or continuous conspiratorial relationship.

(d) No person may be convicted of conspiracy to commit an offense [ ] unless an overt act in pursuance of the conspiracy is alleged and proved to have been done by the person or by another with whom the person conspired.

*Id*. § 39-12-103(a)-(d).

To prove the existence of a conspiratorial relationship, the State may rely upon a "mutual implied understanding" existing between or among the parties. *State v. Shropshire*, 874 S.W.2d 634, 641 (Tenn. Crim. App. 1993). The conspiracy need not be proved by production of an official or formal agreement, in writing or otherwise. *Id*. The conspiracy may be demonstrated by circumstantial evidence and the deportment of the participants while undertaking illegal activity. *Id*. Conspiracy connotes harmonization of design, not coequal participation in the minutia of every criminal offense. *Id*.

The evidence adduced at trial established that Defendant Long was driving a vehicle, in which Defendants Williams and Spann were passengers, eastbound on I-40 toward Nashville when it was stopped by Agent Currie. Defendant Long gave Agent Currie false identification. Agent Currie found digital scales with cocaine residue inside the vehicle. He also found approximately $4,000 in cash, bound by a rubber band, inside Defendant Spann's shoe. After being allowed to continue traveling, the defendants drove to Swett's Restaurant, where they parked in a private area behind the building that was 559 feet away from a school. Within minutes of their arrival, a man parked beside them and got inside the defendants' vehicle for only "seconds" before returning to his vehicle and driving away. All three defendants were inside the vehicle with the driver of the Dodge Charger. A reasonable inference can be drawn from the evidence that the driver of the Dodge Charger sold the cocaine to the defendants. The defendants went inside the restaurant again, returned to their vehicle with takeout food, and drove away. The defendants were driving westbound on I-40 toward Jackson when they were stopped by Officer Schmitz within 214 feet of an elementary school. A search of the defendants' vehicle yielded the digital scale with cocaine residue and

rolling papers. A search of Defendant Williams revealed 334 grams of cocaine, and Defendant Spann no longer had the $4,000 cash.

In his brief, Defendant Long cites *State v. Crawford*, 470 S.W.2d 610 (Tenn. 1971), *overruled by State v. Dorantes*, 331 S.W.3d 370 (Tenn. 2011), and argues that the evidence fails to weave a "web of guilt" and eliminate all other inferences. However, that is no longer the standard in Tennessee. In *Dorantes*, our supreme court explicitly rejected the standard set forth in *Crawford* and found that the State had no duty to exclude every other reasonable hypothesis save that of the defendant's guilt. 331 S.W.3d at 381. The evidence at trial shows that Defendant had constructive possession of the cocaine recovered from Defendant Williams. Defendant Long provided and drove the vehicle. He was present in the vehicle while the man from the green Dodge Charger was inside the vehicle. He provided law enforcement with a false identification and a false story about the defendants' reason for traveling to Nashville. He initially refused consent to search the vehicle, and agreed to allow officers to search only after Defendant Williams had exited the car with the bag containing the cocaine on Defendant Williams' person. It is reasonable to infer that Defendant knew the drugs were inside the vehicle, assisted in acquiring them, and attempted to conceal them from officers. The evidence is sufficient to support Defendants' convictions. Defendant is not entitled to relief on this issue.

There is also sufficient evidence to support the conclusion that the offense took place within 1,000 feet of a school. Mr. Kline testified that the parking lot behind Swett's Restaurant is 135 feet from McKissack Park and 595 feet from Pearl Cohn Comprehensive High School. He also testified that the location at which Defendant's vehicle was stopped on I-40 is 775 feet from Gower Elementary School and 214 feet from Brookmeade Elementary School. Mr. Keel testified that all of these schools were in session on the date of the offense. Defendant argues that because he was not a resident of Davidson County and was unfamiliar with the location of its schools, the State has failed to meet its burden. However, the Drug-Free School Zone Act does not create a separate criminal offense for manufacturing, delivering, selling, or possessing a controlled substance in a school zone; "it merely imposes a harsher penalty for violations of Tenn. Code Ann. § 39-17-417 occurring within a school zone." *State v. Smith*, 48 S.W.3d 159, 168 (Tenn. Crim. App. 2000). Nothing in the statute requires prior knowledge of the school zone. Accordingly, this issue is without merit. Defendant is not entitled to relief.

## IV. Defendant Long's career offender status

Finally, Defendant Long contends that the trial court erred in classifying him as a career offender. Specifically, Defendant asserts that he did not possess sufficient prior felony convictions to be a career offender because three of his prior felony convictions occurred

during the same 24-hour period, and therefore should have been considered a single conviction for purposes of determining his offender status. He argues that the statutory exception to the 24-hour rule for offenses involving bodily injury, serious bodily injury, or the threat of such, does not apply in this case because two of the three convictions that occurred within 24 hours of each other were for attempted second degree murder, which does not contain an element of bodily injury, serious bodily injury, or a threat of bodily injury or serious bodily injury.

At sentencing, the trial court first determines the appropriate offender status based upon a defendant's prior felony record. *See* Tenn. Code Ann. § 40-35-104. The court then determines the appropriate range to establish the minimum and maximum sentence available. *See* Tenn. Code Ann. §§ 40-35-104 to 108. A "multiple offender" is sentenced within Range II, a "persistent offender" within Range III, and a "career offender" receives the maximum sentence within Range III. *See* Tenn. Code Ann. § 40-35-106, 107, 108.

Tenn. Code Ann. § 40-35-108(a)(2) defines a career offender as "a defendant who has received . . . any combination of four (4) Class A or Class B felony convictions if the defendants' conviction offense is a Class A or B felony." Subsection (b)(4) sets forth that convictions for multiple felonies committed within the same 24-hour period constitute only a single conviction for purposes of establishing range unless the convictions have statutory elements that "include serious bodily injury, bodily injury, threatened serious bodily injury, or threatened bodily injury to the victim or victims."

At the sentencing hearing, the State offered into evidence certified copies of the indictments and judgment forms for the following offenses for which Defendant was convicted:

1.      Attempted second degree murder, Class B felony, Case #96-562, Madison County, Offense date 5-24-96.

2.      Attempted second degree murder, Class B felony, Case #96-562, Madison County, Offense date 5-24-96.

3.      Attempted especially aggravated robbery, Class B felony, Case #96-562, Madison County, Offense date 5-24-96.

4.      Possession of cocaine with intent to sell, Class B felony, Case #98-821, Madison County, Offense date 7-1-98.

5.      Possession of cocaine with intent to sell, Class B felony, Case #94-698, Madison County, Offense date 11-11-93.

We conclude that the trial court properly sentenced the defendant as a career offender. Defendant apparently contends that all three of his convictions for the offenses that occurred on May 24, 1996, should merge, leaving him with only three Class B felony convictions. However, as the State correctly points out, even if Defendants' two convictions for attempted second degree murder are merged because they do not meet the statutory exception under Tenn. Code Ann. § 40-35-108(b)(4), Defendant is still left with four Class B felony convictions because his conviction for attempted especially aggravated robbery does not merge, as it contains an element of serious bodily injury. The indictment for that offense reads:

> [O]n or about May 24, 1996, in Madison County, Tennessee, and before the finding of this indictment, [Defendant Long] did unlawfully, knowingly, and/or intentionally obtain property, to-wit: cash, from the person of [the victim], by violence and accomplished by the use of a deadly weapon, to-wit: a gun, . . . , as a result of which [the victim] suffered serious bodily injury, in violation of T.C.A. § 39-13-403, all of which is against the peace and dignity of the State of Tennessee.

Defendant does not argue that his conviction for attempted especially aggravated robbery should merge, nor does he dispute that he has two other Class B felony convictions in addition to his convictions for the offenses that occurred on May 24, 2006. Defendant is not entitled to relief on this issue.

## CONCLUSION

Finding no error, the judgments of the trial court are affirmed.

_____
THOMAS T. WOODALL, JUDGE