# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### April 6, 2010 Session

## STATE OF TENNESSEE v. MIKE BROTHERTON

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Carroll County**
**No. 07CR66      Donald E. Parish, Judge**

---

**No. W2007-02016-SC-R11-CD - Filed September 27, 2010**

---

This appeal involves an intoxicated driver who was stopped after a law enforcement officer saw what he believed to be a broken taillight on the driver's automobile.  In his prosecution for driving under the influence in the Circuit Court for Carroll County, the driver asserted that the taillight did not provide the officer with reasonable suspicion to stop his automobile. After the trial court denied his motion, the driver pleaded guilty to driving under the influence but reserved the question of the legality of the traffic stop in accordance with Tenn. R. Crim. P. 37(b)(2).  The Court of Criminal Appeals reversed the conviction and dismissed the indictment after finding that the officer lacked reasonable suspicion to make the traffic stop. *State v. Brotherton*, No. W2007-02016-CCA-R3-CD, 2009 WL 1097446 (Tenn. Crim. App. Apr. 23, 2009).  We granted the State's application for permission to appeal to address the application of the reasonable suspicion standard in circumstances involving apparently broken taillights.  Based on the undisputed facts, we conclude that the trial court's determination that the trooper had reasonable suspicion to initiate a traffic stop was correct.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Reversed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the Court, in which JANICE M. HOLDER, C.J., CORNELIA A. CLARK, GARY R. WADE, and SHARON G. LEE, JJ., joined.

Robert E. Cooper, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Rachel E. Willis, Assistant Attorney General; Hansel McCadams, District Attorney General, and Steven Jackson, Assistant District Attorney General, for the appellant, State of Tennessee.

Matthew M. Maddox, Huntingdon, Tennessee, for the appellee, Mike Brotherton.

**OPINION**

**I.**

Trooper Michael Sullivan was patrolling State Route 219 in Carroll County on February 4, 2007. Shortly after midnight, he passed an automobile traveling in the opposite direction. Looking in his driver's side mirror, Trooper Sullivan saw a "bright light" shining from the other automobile's passenger's side taillight area as the automobile slowed to approach a railroad crossing. Because it was "obvious" to him that the taillight was broken, Trooper Sullivan turned around and began following the other automobile.

Trooper Sullivan followed the automobile for almost three miles. During that time, he noticed that the automobile was weaving within its lane, but he did not observe the driver commit any other moving violations. Eventually, Trooper Sullivan decided to stop the automobile to investigate the broken taillight. Accordingly, he activated his emergency lights and signaled the driver of the automobile to pull over.

When Trooper Sullivan approached the automobile, he discovered that Mike Brotherton, the driver, smelled of alcohol. He also observed a twelve-pack of beer on the right front floorboard of Mr. Brotherton's automobile. When questioned about his activities that evening, Mr. Brotherton admitted to Trooper Sullivan that he had just left a bar where he had consumed "five or six beers." He also confessed to drinking three to four more beers from the twelve-pack. Trooper Sullivan arrested Mr. Brotherton for driving under the influence and for violation of the implied consent law. He also cited Mr. Brotherton for driving without a seatbelt, having a broken taillight, and failing to change his address on his driver's license.

At a preliminary hearing held on April 26, 2007, the charges against Mr. Brotherton for violating the seatbelt law, failing to change the address on his driver's license, and operating a vehicle with a broken taillight were dismissed. The broken taillight charge was dismissed because Mr. Brotherton had "repaired" the taillight on his automobile sometime after his February 4 arrest. The remaining charges were bound over to the Carroll County grand jury. On May 7, 2007, the grand jury indicted Mr. Brotherton for driving under the influence, second offense, and for violation of the implied consent law.

On May 29, 2007, Mr. Brotherton filed a Tenn. R. Crim. P. 12(b)(3)[1] motion in the Circuit Court for Carroll County, seeking to suppress all statements and other evidence obtained as a result of the February 4, 2007 traffic stop. At a hearing on the motion

---

[1]This rule was subsequently redesignated as Tenn. R. Crim. P. 12(b)(2)(C).

conducted on May 29, 2007, Trooper Sullivan testified at length about the stop, the appearance of the taillight on Mr. Brotherton's automobile, and his understanding of the statutory requirements for lights on motor vehicles.[2]

Trooper Sullivan testified that the taillight lens on Mr. Brotherton's automobile was broken and that it had been repaired using red taillight tape.[3] Pictures of Mr. Brotherton's automobile depicted that red taillight repair tape covered more than 50% of the taillight lens.[4] Trooper Sullivan testified that the taillight he observed on February 4, 2007 was covered with "old, weathered tape that had a hole in the center . . . with light shining through." Trooper Sullivan also testified that he believed that the taillight violated Tenn. Code Ann. § 55-9-402(b)(2) which prohibits "glaring" or "dazzling" lights on stoplights. Trooper Sullivan construed the statute to prohibit broken taillights patched with taillight repair tape with a hole in the tape that allows bright white light to escape.

The trial court also reviewed photographs showing that the red taillight repair tape covered over 50% of the taillight lens. Based on the photographs and Trooper Sullivan's testimony, the court concluded that the stop was "based on specific and articulable facts" and refused to suppress the evidence against Mr. Brotherton. On July 30, 2007, the trial court filed an order denying Mr. Brotherton's motion to dismiss.

Realizing the futility of a trial with the overwhelming weight of the evidence against him, Mr. Brotherton negotiated a plea agreement with the State in which he agreed to plead guilty to driving under the influence, first offense, and, in return, the State would agree to drop the remaining implied consent charge. However, Mr. Brotherton conditioned his plea on his ability to reserve a certified question under Tenn. R. Crim. P. 37(b)(2) regarding the validity of the stop. Mr. Brotherton filed a timely notice of appeal.

The Court of Criminal Appeals reversed the trial court. The court based its analysis on whether Mr. Brotherton's taillight "was 'in good condition and operational' according to Tennessee Code Annotated section 55-9-402(c)." *State v. Brotherton*, No. W2007-02016-CCA-R3-CD, 2009 WL 1097446, at *3 (Tenn. Crim. App. Apr. 23, 2009).

---

[2] *See* Tenn. Code Ann. § 55-9-402 (Supp. 2007).

[3] A sample package of Tail Light Tape is included in the record. It is a red film that "[r]esists [w]eather and [m]oisture" and is "[t]ranslucent like an [o]riginal [l]ens." It is used to temporarily patch cracks or holes in a vehicle's plastic taillight lens until the lens can be replaced. Apparently some automobile owners use the tape indefinitely in order to avoid the expense of replacing the broken lens.

[4] Mr. Brotherton authenticated these photographs and testified that they accurately depicted the condition of his automobile on February 4, 2007.

Looking to the facts that the taillight illuminated when the vehicle's brakes were applied and that Mr. Brotherton had made an attempt to repair the light with taillight tape, the court held that Trooper Sullivan lacked reasonable suspicion to initiate a traffic stop. *State v. Brotherton*, 2009 WL 1097446, at *5. We granted the State's Tenn. R. App. P. 11 application for permission to appeal to address the legality of the traffic stop.

## II.

When reviewing the correctness of a trial court's decision in response to a motion to suppress, we will defer to the trial court's findings of fact unless the evidence preponderates otherwise. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). The party who prevailed in the trial court is entitled to the strongest legitimate view of the evidence, as well as all reasonable inferences that may be drawn from the evidence. *State v. Odom*, 928 S.W.2d at 23. The facts here are undisputed. It is the application of the law to those facts that is at issue. Accordingly, we review the trial court's legal conclusions de novo without a presumption of correctness. *State v. Day*, 263 S.W.3d 891, 900 (Tenn. 2008).

## III.

The Fourth Amendment to the United States Constitution proscribes "unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause . . . particularly describing . . . the persons . . . to be seized." Likewise, Article I, Section 7 of the Tennessee Constitution states that "the people shall be secure in their persons . . . from unreasonable searches and seizures." Because traffic stops constitute seizures entitling a vehicle's occupants to the full protections of the United States and Tennessee Constitutions, *Whren v. United States*, 517 U.S. 806, 809-10 (1996); *State v. Pulley*, 863 S.W.2d 29, 30 (Tenn. 1993), the authorities must act reasonably when initiating a traffic stop.

The United States Supreme Court has interpreted this requirement to mean that the authorities must have probable cause or an "articulable and reasonable suspicion" to believe that a traffic violation has occurred when they initiate a traffic stop. *Whren v. United States*, 517 U.S. at 810; *Delaware v. Prouse*, 440 U.S. 648, 663 (1979); *accord State v. Vineyard*, 958 S.W.2d 730, 736 (Tenn. 1997). Reasonable suspicion exists when "specific and articulable facts . . . taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). An investigatory traffic stop under *Terry* "is a far more minimal intrusion [than an arrest pursuant to probable cause], simply allowing the officer to briefly investigate further. If the officer does not learn facts rising to the level of probable cause, the individual must be allowed to go on his way." *Illinois v. Wardlow*, 528 U.S. 119, 126 (2000). However, officers must have some

-4-

reasonable basis to warrant investigation; a mere "inchoate and unparticularized suspicion or 'hunch'" is not enough to generate reasonable suspicion. *Terry v. Ohio*, 392 U.S. at 27.

Tennessee's courts have also had ample opportunity to apply the reasonable suspicion standard. We have held that reasonable suspicion is "a particularized and objective basis for suspecting the subject of a stop of criminal activity." *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000). The courts must look to the totality of the circumstances, *State v. Levitt*, 73 S.W.3d 159, 172 (Tenn. Crim. App. 2001) (citing *United States v. Cortez*, 449 U.S. 411, 417-18 (1981); *Ornelas v. United States*, 517 U.S. 690, 696 (1996)), to determine whether an officer reasonably believed that the operator of a vehicle had either committed a crime or was about to commit a crime. *State v. Levitt*, 73 S.W.3d at 172; *State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000). It is constitutionally permissible to stop a vehicle for an equipment violation in Tennessee. *State v. England*, 19 S.W.3d at 766 (approving lower court holding that a violation of Tenn. Code Ann. § 55-9-404 created a reasonable suspicion incident to a traffic stop).

## IV.

The statute at issue in this case contains three requirements with regard to taillights that are relevant to this appeal. First, it requires that all motor vehicles be equipped "with two (2) red tail lamps and two (2) red stoplights on the rear of the vehicle." Tenn. Code Ann. § 55-9-402(b)(1). Second, it requires that the stoplight "shall not project a glaring or dazzling light." Tenn. Code Ann. § 55-9-402(b)(2). Third, it requires that each lamp and stoplight "shall be in good condition and operational." Tenn. Code Ann. § 55-9-402(c).

The Court of Criminal Appeals, bypassing the first two statutory requirements, focused its attention on the requirement that the stoplight be in "good condition." Noting that the statute does not define or describe what "good condition" means, the court decided that the taillight on Mr. Brotherton's automobile was in good condition and operational because Mr. Brotherton had repaired it with taillight tape.

To support its conclusion that Mr. Brotherton's taillight was in good condition for the purpose of Tenn. Code Ann. § 55-9-402, the Court of Criminal Appeals compared the condition of his taillight with the condition of another broken taillight that had provided grounds to stop a vehicle. The United States Court of Appeals for the Sixth Circuit had found that a broken taillight "with a piece of the red plastic missing" provided a sufficient basis for the stop of a vehicle that led to an arrest for drug trafficking. *United States v. Johnson*, 242 F.3d 707, 708-10 (6th Cir. 2001). In an effort to distinguish Mr. Brotherton's circumstances from Mr. Johnson's, the Court of Criminal Appeals attached great significance to the fact that Mr. Brotherton, unlike Mr. Johnson, had tried to repair his broken taillight and

concluded that Mr. Brotherton's taillight "was not in perfect condition nor was it in pristine condition [but] it was in working condition." *State v. Brotherton*, 2009 WL 1097446, at *5. Based on this distinction, the court concluded that Trooper Sullivan lacked reasonable suspicion to believe that a traffic violation had occurred. *State v. Brotherton*, 2009 WL 1097446, at *5.

The Court of Criminal Appeals erred by considering only whether the taillight on Mr. Brotherton's automobile was "in good condition and operational" for the purpose of Tenn. Code Ann. § 55-9-402(c). A showing of reasonable suspicion does not require an actual violation of the law because "*Terry* accepts the risk that officers may stop innocent people" to investigate further. *Illinois v. Wardlow*, 528 U.S. 119 at 126. Thus, the proper inquiry should have been whether Trooper Sullivan had an "articulable and reasonable suspicion" that Mr. Brotherton's taillight violated Tenn. Code Ann. § 55-9-402, not whether Mr. Brotherton's taillight, in fact, violated Tenn. Code Ann. § 55-9-402. *See United States v. Johnson*, 242 F.3d at 709-10 ("[T]he question is not whether a Tennessee court would have found defendant guilty of the traffic infraction, but whether the officers had probable cause to believe that a violation had occurred."); *see also United States v. Fowler*, 402 F. Supp. 2d 1338, 1340-41 (D. Utah 2005) (upholding the validity of a stop when the trooper mistook a fog light for a brake light because it reasonably appeared to violate the lighting laws under the circumstances).

Under the totality of the circumstances in this case, we agree with the trial court that Trooper Sullivan had an articulable and reasonable suspicion that Mr. Brotherton's taillight violated Tenn. Code Ann. § 55-9-402(b). Even though Mr. Brotherton may have attempted to repair his broken taillight, the tape he used to repair the taillight had a hole in it that permitted a bright white light to shine through, in much the same way that the missing piece of the plastic lens on Mr. Johnson's taillight permitted light to shine through. Because of the hole in the tape on Mr. Brotherton's taillight, his repaired taillight did not appear to be in good condition for the purpose of Tenn. Code Ann. § 55-9-402(c).

The bright white light shining from the hole in the tape on Mr. Brotherton's taillight likewise provided a basis for an articulable and reasonable suspicion that Mr. Brotherton's taillight violated Tenn. Code Ann. § 55-9-402(b)(1). This provision requires vehicles to have two "red" taillights and two "red" stoplights. *See State v. Patterson*, 97 P.3d 479, 482 (Idaho Ct. App. 2004) (upholding a stop where a cracked taillight allowed white light to show through); *State v. Kenyon*, 651 N.W.2d 269, 270-71, 274 (S.D. 2002) (upholding a stop where the taillight repair tape had come off thereby allowing white light to show through).

By the same token, the bright light shining through the hole in the taillight repair tape provided a basis for an articulable and reasonable suspicion that Mr. Brotherton's taillight

violated the prohibition against "glaring or dazzling light[s]" in Tenn. Code Ann. § 55-9-402(b)(2). The common understanding and plain meaning of the terms "glaring" and "dazzling"[5] coincide with Trooper Sullivan's description of the light he observed coming from the taillight of Mr. Brotherton's automobile. Trooper Sullivan testified: "I think a glaring light would be a brighter light than what would normally be on the vehicle, and with a hole in the red tape, you're going to have a bright white light." Clearly, Trooper Sullivan had a firm understanding of the law he was enforcing. The fact that the taillight on the passenger's side of Mr. Brotherton's automobile emitted a bright white light created reasonable suspicion for Trooper Sullivan to stop his vehicle.

Our review of the essentially undisputed facts prompts us to conclude that Trooper Sullivan had multiple bases for initiating an investigatory stop of Mr. Brotherton's automobile. We are not finding that Tenn. Code Ann. § 55-9-402 requires taillights to be maintained in the same condition that they were in when the automobile left the showroom or that taillights repaired with taillight repair tape are per se violations of Tenn. Code Ann. § 55-9-402. We have concluded in this case only that an automobile being operated with a broken taillight that has been repaired with taillight repair tape that is itself in disrepair may provide the authorities with a reasonable suspicion sufficient to justify an investigative stop to ascertain the status of the taillight.

## V.

Accordingly, we reverse the judgment of the Court of Criminal Appeals, affirm the judgment of conviction entered by the trial court, and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to Mike Brotherton for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUSTICE

---

[5]The Oxford English Dictionary defines "glaring" as that which "gives out or reflects a dazzling light . . . excessively bright." 6 *The Oxford English Dictionary* 556 (2d ed. 1989). Similarly, it defines "dazzling" as that which "dazzles the eyes (*esp*. with brightness); bright to a degree that dazzles." 4 *The Oxford English Dictionary* 279 (2d ed. 1989).