# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### January 25, 2011 Session

## STATE OF TENNESSEE v. TRACY J. BROOKS

**Direct Appeal from the Circuit Court for McMinn County**
**No. 09-071    Amy A. Reedy, Judge**

---

**No. E2010-01509-CCA-R3-CD - Filed June 22, 2011**

---

The appellant, Tracy J. Brooks, pled guilty in the McMinn County Circuit court to driving under the influence (DUI) and received a sentence of eleven months, twenty-nine days to be served as forty-eight hours in jail and the remainder on probation. As a condition of her plea, the appellant reserved a certified question of law, namely whether the police officer had reasonable suspicion to initiate a traffic stop. Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Robert W. White, Maryville, Tennessee, for the appellant, Tracy J. Brooks.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; R. Steven Bebb; District Attorney General; and Krista Oswalt and Andrew Freiberg, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

The record reflects that in March 2009, the McMinn County Grand Jury indicted the appellant for aggravated assault, DUI, DUI per se, and resisting arrest. The appellant filed a motion to suppress all evidence obtained as a result of her traffic stop, arguing that the police officer who initiated the stop did not have reasonable suspicion to believe she committed a traffic violation. During a hearing on the motion, Caleb Martin testified that on July 8, 2008, he was an officer for the Englewood Police Department and initiated a traffic

stop of a vehicle traveling south on Highway 411. The highway had two lanes for northbound traffic and two lanes for southbound traffic, separated by a median. The stopped vehicle and Officer Martin's patrol car were pulled onto the southbound shoulder of the highway and were parked on the right side of the fog line. Officer Martin's car was parked behind the stopped vehicle, and the patrol car's emergency lights were flashing. Both cars were facing south. He said that he got out of his patrol car, that he shut the door, and that a red and white eighteen-wheeler truck traveling south approached in the lane immediately adjacent to the shoulder of the highway. He said that the truck almost hit him and his patrol car and that he had to jump onto the hood of his car. Officer Martin terminated his current traffic stop, got into his patrol car, and pursued the truck. He said that he tried to stop the truck and that the driver, who was the appellant, finally stopped one to one and one-half miles outside the city limits.

On cross-examination, Officer Martin testified that the speed limit in the area was forty miles per hour. When asked if any other vehicles were traveling on the highway at the time of the incident, he said, "There had been some slight traffic through there." On redirect examination, the State asked Officer Martin if the truck crossed the fog line, and he said, "It was pretty close to it. I don't know for sure because I was jumping on the hood of my car."

The then thirty-one-year-old appellant testified that on July 8, 2008, she had a valid Tennessee commercial driver's license, worked for Loudon County Trucking, and was traveling south on Highway 411. She said that the truck's fifty-three-foot trailer was empty, that she was on her way to Georgia to pick up a load, and that she was traveling thirty-five to forty miles per hour. She saw a patrol car and another car pulled into the southbound emergency lane, and the patrol car was parked behind the other car. She said that she looked in the southbound left lane to see if she could move over but that a white four-door car was in the left lane. She said that

> the only thing I could do was hold the position and just stay straight and try to pass by it because I didn't want to run the other vehicle off the road and I didn't want to come over on them either and [the truck is] only going to fit in its lane.

She said that the white car was "near the end of the trailer at first" and that "there's no way to just stop and brake because it's an empty trailer and it will bounce." When asked if she attempted to slow down, she said, "I let off it waiting [for the white car] to try to get on by." She acknowledged that her truck stayed within its lane.

On cross-examination, the appellant acknowledged that the patrol car's emergency lights were flashing. She also acknowledged that the distance between her truck and the

patrol car when she first noticed the patrol car may have been one thousand yards. However, she denied that she had time to move the truck into the left lane. She said she did not think her intoxication impaired her ability to operate the truck.

At the conclusion of the hearing, the State argued that Officer Martin properly stopped the appellant because "she obviously did not move over when she saw his lights for officer safety. She obviously put him in danger and also failed to maintain her lane of travel and we think that those things alone constitute probable case in this case." The defense argued that no traffic violation occurred because the evidence showed the appellant slowed down and maintained her lane of travel.

The trial court ruled as follows:

> Well, obviously there's a disagreement about her reduction of speed and the safe distance that she was passing and if it was impossible for her to get over. The officer obviously didn't see what she said she saw which was another car in another lane. He says he jumped on the hood of his vehicle and so there was obviously failure to slow and move over to create a safe environment for this officer to effectuate the stop. They both agree he was off the roadway as he should have been, but he had probable cause to stop the vehicle and so I will deny the motion to suppress.

Subsequently, the trial court granted the appellant's request for an interlocutory appeal pursuant to Rule 9, Tennessee Rules of Appellate Procedure. However, this court denied the Rule 9 application. The appellant pled guilty to DUI in exchange for a sentence of eleven months, twenty-nine days, to be served as forty-eight hours in jail and the remainder on probation and reserved a certified question of law pursuant to Tennessee Rule of Criminal Procedure 37(b)(2)(A). The remaining charges were dismissed.

## II. Analysis

The appellant argues that the trial court erred by failing to grant the motion to suppress because "[t]here is no indication that Appellant had committed a crime or was about to commit a crime." Specifically, the appellant argues that Officer Martin had no reasonable suspicion to stop her because the evidence is unrefuted that a white car was in the left lane, that she slowed down, and that she maintained her lane of travel. The State argues that the trial court properly denied the motion because Officer Martin had reasonable suspicion that the appellant violated the move over law. We agree with the State.

In reviewing a trial court's determinations regarding a suppression hearing, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." Id. Nevertheless, appellate courts will review the trial court's application of law to the facts purely de novo. State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). Furthermore, the State, as the prevailing party, is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from the evidence." Odom, 928 S.W.2d at 23.

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect citizens against unreasonable searches and seizures. Generally, a warrantless search is presumptively unreasonable and thus violates constitutional protections. See State v. Walker, 12 S.W.3d 460, 467 (Tenn. 2000). Evidence derived from such a search is subject to suppression unless the State "demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to an exception to the warrant requirement." State v. Keith, 978 S.W.2d 861, 865 (Tenn. 1998). One such exception occurs when a police officer conducts a stop of an automobile based upon a reasonable suspicion or probable cause to believe that a traffic violation has occurred. State v. Vineyard, 958 S.W.2d 730, 734 (Tenn. 1997). Regarding reasonable suspicion, our supreme court recently explained,

> Reasonable suspicion exists when "specific and articulable facts . . . taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio, 392 U.S. 1, 21 (1968). An investigatory traffic stop under Terry "is a far more minimal intrusion [than an arrest pursuant to probable cause], simply allowing the officer to briefly investigate further. If the officer does not learn facts rising to the level of probable cause, the individual must be allowed to go on his way." Illinois v. Wardlow, 528 U.S. 119, 126 (2000). However, officers must have some reasonable basis to warrant investigation; a mere "inchoate and unparticularized suspicion or 'hunch'" is not enough to generate reasonable suspicion. Terry v. Ohio, 392 U.S. at 27.

State v. Brotherton, 323 S.W.3d 866, 870 (Tenn. 2010).

In Brotherton, a highway patrol officer stopped the defendant for driving a car with a broken taillight in violation of Tennessee Code Annotated section 55-9-402. Id. at 868. The taillight had been repaired with red taillight tape. Id. at 869. The defendant filed a motion to suppress evidence on the basis that the trooper lacked reasonable suspicion for the stop. Id. at 868. In concluding that the trooper had a reasonable suspicion to stop the defendant's vehicle, the Tennessee Supreme Court stated,

> A showing of reasonable suspicion does not require an actual violation of the law because "Terry accepts the risk that officers may stop innocent people" to investigate further. Illinois v. Wardlow, 528 U.S. 119 at 126. Thus, the proper inquiry should have been whether Trooper Sullivan had an "articulable and reasonable suspicion" that Mr. Brotherton's taillight violated Tenn. Code Ann. § 55-9-402, not whether Mr. Brotherton's taillight, in fact, violated Tenn. Code Ann. § 55-9-402. See United States v. Johnson, 242 F.3d at 709-10 ("[T]he question is not whether a Tennessee court would have found defendant guilty of the traffic infraction, but whether the officers had probable cause to believe that a violation had occurred."); see also United States v. Fowler, 402 F. Supp. 2d 1338, 1340-41 (D. Utah 2005) (upholding the validity of a stop when the trooper mistook a fog light for a brake light because it reasonably appeared to violate the lighting laws under the circumstances).

Id. at 871.

At the time of the offense, Tennessee Code Annotated section 55-8-132(b) (2008), often referred to as the "move over law," provided as follows:

> Upon approaching a stationary authorized emergency vehicle, when the vehicle is giving a signal by use of flashing lights, a person who drives an approaching vehicle shall:
>
> > (1) Proceeding with due caution, yield the right-of-way by making a lane change into a lane not adjacent to that of the authorized emergency vehicle, if possible with due regard to safety and traffic conditions, if on a highway having at least four (4) lanes with not less than two (2) lanes proceeding in the same direction as the

approaching vehicle; or

(2) Proceeding with due caution, reduce the speed of the vehicle, maintaining a safe speed for road conditions, if changing lanes would be impossible or unsafe.

Obviously, the purpose of the law is to protect authorized emergency personnel, such as Officer Martin, who work on the side of the road.

The move over law requires a person, who is driving a vehicle that is approaching a stationary emergency vehicle, to move into the lane non-adjacent to the emergency vehicle. The only reason a person should remain in the lane adjacent to the emergency vehicle is if changing lanes would be impossible or unsafe. In the instant case, the appellant testified that she could not change lanes because a white car was in the left lane. However, Officer Martin obviously did not see a car that would have prevented the appellant from changing lanes. Given that Officer Martin did not see a vehicle that would have prevented the appellant from moving the truck into the non-adjacent lane, which was the primary course of action required by the law, and that the appellant almost struck the officer and his patrol car, which were both outside the appellant's lane of travel, we believe the officer had reasonable suspicion to stop the appellant and investigate further. Therefore, the trial court properly denied the appellant's motion to suppress.

### III. Conclusion

Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE

-6-