# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs April 25, 2012

## STATE OF TENNESSEE v. JOSE LUIS GONZALEZ

**Appeal from the Circuit Court for Blount County**
**No. C-19316     David R. Duggan, Judge**

───────────────

**No.  E2011-02135-CCA-R9-CD - Filed December 5, 2012**

───────────────

Appellee, Jose Luis Gonzalez, was indicted by the Blount County Grand Jury for possession of cocaine with the intent to sell or deliver and possession of a firearm with intent to go armed in the commission of a felony.  Prior to trial, Appellee filed a motion to suppress the evidence based on an illegal traffic stop.  The trial court determined that the evidence seized during a traffic stop should be suppressed, granting the motion filed by Appellee.  The State sought an interlocutory appeal on the matter, asking this Court to reverse the grant of the motion to suppress.  After a review of the record, we determine police had probable cause to stop Appellant's vehicle for improper brake light operation, or at minimum a reasonable and articulable suspicion the lights violated Tennessee Code Annotated section 55-9-402.  As a result, we conclude based on the facts herein that the officer effectuated a lawful traffic stop of Appellee.  Consequently, the trial court's grant of the motion to suppress is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Reversed and Remanded.**

JERRY L. SMITH, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and D. KELLY THOMAS, JR., JJ., Joined.

Robert E. Cooper, Jr., Attorney General and Reporter, John H. Bledsoe, Assistant Attorney General; Mike Flynn, District Attorney General, and Matthew Dunn, Assistant District Attorney General, for the appellant, State of Tennessee.

Eugene Dixon, Maryville, Tennessee, for the appellee, Jose Luis Gonzalez.

## OPINION

### *Factual Background*

On January 11, 2010, Appellee was pulled over by an Alcoa police officer after the officer observed a red Chevrolet Suburban whose white reverse lights were activated when the driver applied the brakes. During the stop, Appellee was found to be in possession of cocaine, a .22 caliber handgun and a .38 caliber handgun. As a result, Appellee was indicted in January of 2011 for possession of .5 grams or more of cocaine in a drug free zone with the intent to sell or deliver and possession of a firearm with the intent to go armed during the commission of or attempt to commit a dangerous felony.

Prior to trial, Appellee filed a motion to suppress the results of the search incident to the arrest on the basis that: (1) the search was without a warrant and in the absence of exigent circumstances; (2) the search was the product of prior unlawful police activity; (3) the property seized was not in plain view; (4) the search violated Appellee's reasonable expectation of privacy; (5) the search was conducted without probable cause; (6) the search was illegal because it occurred prior to the arrest and was without Appellee's consent; (7) the search was the product of an unlawful stop of Appellee[1].

The trial court held a hearing on the motion. At the hearing, Officer James H. Sparks testified that he was on patrol on January 11, 2010, at approximately 10:10 p.m. when he observed a red Chevrolet Suburban driving southbound on Hall Road. Officer Sparks saw that when the driver of the vehicle applied his brakes, the white reverse light would come on. Officer Sparks followed the vehicle for about half a mile before the vehicle turned into a parking lot. As the vehicle slowed and applied the brakes, the white reverse light came on again. At that time, Officer Sparks effectuated a traffic stop.

Counsel for Appellee argued at the hearing that there was no probable cause to stop the vehicle under Tennessee Code Annotated section 55-9-402(b). Specifically, counsel argued that Appellee's taillights were working properly and that there was not a defect in the light that would have allowed the officer to effectuate a stop under the statute. At the conclusion of the hearing, the trial court granted the motion to suppress, stating:

> The reason I'm going to grant the motion to suppress is because of the way this statute is worded. And that is not the officer's fault. . . . But the way this statute is worded, there is no question that you can stop somebody if the

---

[1] On appeal the only issue raised is the legality of the stop of Appellant's vehicle and this Court's holding is limited to that issue only.

taillights are not properly working.  And I've already cited to a couple of cases that say you can stop them if they're not on, you can stop them even if they are on but there's a hole in the plastic, you know.

Now, there's also no question that this statute says that the taillights shall be properly operational.  But then when it comes to defining what's operational, even though the word "shall" is used throughout this statute - - .

. . .

But then when it comes to telling us how a stop light - - or rather a taillight may operate, in essence defining "operation" - - it shall be in operation.  But then when it goes to telling us how they operate, for the first time in this statute it says the motor vehicle taillight lamp "may" operate as follows - - or as following.  And that's when it says that the white back-up light is supposed to come on when it's in reverse and it's not supposed to come on when it's in reverse and it's not supposed to otherwise supposed to come on if it's just a normal stop.  All that's following the word "may."  Why in the world the General Assembly worded it that way, I don't know. . . .  But that, coupled with the fact that I think otherwise I can see from this video that he was driving properly, and I don't see anything that appeared to be dangerous to the public to create any kind of safety hazard  - - . . . . I'm gong to grant this motion to suppress.

. . . .

I'm deciding this on the use of the word "may."

The State sought an interlocutory appeal, challenging the trial court's ruling on the motion to suppress.  Specifically, the State asked this Court to determine if the language of Tennessee Code Annotated section 55-9-402(b)(4) authorized the officer to stop Appellee when the stop was based solely on the operation of the white backup lights while Appellee's vehicle was traveling in a forward direction.  This Court granted the application for interlocutory appeal.

*Analysis*

On appeal, the State insists that the clear and unambiguous language of the statute supports the proposition that the officer had reasonable suspicion and probable cause to effectuate a traffic stop. Appellee, on the other hand, argues that the "legislature's use of the words 'may' and 'shall' . . . shows a clear difference of intent regarding white backup lights

from other lights which are mandatory on all automobiles." Thus, Appellee argues that there was no probable cause to stop under the statute.

"This Court will uphold a trial court's findings of fact in a suppression hearing unless the evidence preponderates otherwise." *State v. Hayes*, 188 S.W.3d 505, 510 (Tenn. 2006) (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). On appeal, "[t]he prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. Our review of a trial court's application of law to the facts is de novo, with no presumption of correctness. *State v. Walton*, 41 S .W.3d 75, 81 (Tenn. 2001) (citing *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999); *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997)). When the trial court's findings of fact are based entirely on evidence that does not involve issues of witness credibility, however, appellate courts are as capable as trial courts of reviewing the evidence and drawing conclusions, and the trial court's findings of fact are subject to de novo review. *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000).

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect citizens against unreasonable searches and seizures. Generally, a warrantless search is presumptively unreasonable and thus violates constitutional protections. *See State v. Walker*, 12 S.W.3d 460, 467 (Tenn. 2000). Evidence derived from such a search is subject to suppression unless the State "demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to an exception to the warrant requirement." *State v. Keith*, 978 S.W.2d 861, 865 (Tenn. 1998). One such exception occurs when a police officer conducts a stop of an automobile based upon a reasonable suspicion or probable cause to believe that a traffic violation has occurred. *State v. Vineyard*, 958 S.W.2d 730, 734 (Tenn. 1997). Recently, our supreme court explained:

> Reasonable suspicion exists when "specific and articulable facts . . . taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). An investigatory traffic stop under *Terry* "is a far more minimal intrusion [than an arrest pursuant to probable cause], simply allowing the officer to briefly investigate further. If the officer does not learn facts rising to the level of probable cause, the individual must be allowed to go on his way." *Illinois v. Wardlow*, 528 U.S. 119, 126 (2000). However, officers must have some reasonable basis to warrant investigation; a mere "inchoate and unparticularized suspicion or

'hunch' " is not enough to generate reasonable suspicion. *Terry v. Ohio*, 392 U.S. at 27.

*State v. Brotherton*, 323 S.W.3d 866, 870 (Tenn. 2010).

In *Brotherton*, a highway patrol officer stopped the defendant for driving a car with a broken taillight in violation of Tennessee Code Annotated section 55-9-402. *Id.* at 868. The taillight had been repaired with red taillight tape. *Id.* at 869. The defendant filed a motion to suppress evidence on the basis that the trooper lacked reasonable suspicion for the stop. *Id.* at 868. The Tennessee Supreme Court concluded that the trooper had a reasonable suspicion to stop the defendant's vehicle, stating:

> A showing of reasonable suspicion does not require an actual violation of the law because "*Terry* accepts the risk that officers may stop innocent people" to investigate further. *Illinois v. Wardlow*, 528 U.S. 119 at 126. Thus, the proper inquiry should have been whether Trooper Sullivan had an "articulable and reasonable suspicion" that Mr. Brotherton's taillight violated Tenn. Code Ann. § 55-9-402, not whether Mr. Brotherton's taillight, in fact, violated Tenn. Code Ann. § 55-9-402. *See United States v. Johnson*, 242 F.3d [707], 709-10 [(6th Cir. 2001)] ("[T]he question is not whether a Tennessee court would have found defendant guilty of the traffic infraction, but whether the officers had probable cause to believe that a violation had occurred."); *see also United States v. Fowler*, 402 F.Supp.2d 1338, 1340-41 (D. Utah 2005) (upholding the validity of a stop when the trooper mistook a fog light for a brake light because it reasonably appeared to violate the lighting laws under the circumstances).

*Id.* at 871.

At the time of the offense, Tennessee Code Annotated section 55-9-402(b)(4) and 55-9-402(c) stated:

(4) Motor vehicle tail light lamps may operate as following:

> (A) A white backup light operates when the motor vehicle is in reverse;

> (B) When the driver is in a panic stop condition going forward, the backup lamp pulses or flashes red; and

(C) Upon normal stops of the motor vehicle, there is no action by the backup light.

(c) Each lamp and stoplight required in this section shall be in good condition and operational.

Looking at the facts of the case herein and the guidance provided by the court in *Brotherton*, we disagree with the trial court. Clearly, the legislature did not intend for a vehicle's reverse lights to illuminate while a vehicle is in forward motion. Accordingly, because of the operation of the reverse light during forward motion and brake application, we hold Appellee's taillights were not in a good and operational condition within the meaning of Tennessee Code Annotated section 55-9-402(c). Therefore Officer Sparks had probable cause to believe Appellant was in violation of these code sections.

Moreover, as stated in *Brotherton*, "the proper inquiry should have been whether [the officer] had an "articulable and reasonable suspicion" that [Appellee's] taillight violated Tenn. Code Ann. § 55-9-402, not whether [Appellee's] taillight, in fact, violated Tenn. Code Ann. § 55-9-402." Thus, even if we are wrong in our interpretation of sections 55-9-402 (b)(4) and (c), we conclude that Officer Sparks had an articulable and reasonable suspicion that the unusual illumination of Appellee's reverse lights during application of the brakes might be a violation of Tennessee Code Annotated section 55-9-402(b)(4). Even though the statute utilizes the word "may" to describe how tail lamps may operate, the statute does not say that the white backup light "may" operate while the vehicle is moving in a forward direction.

Like the court in *Brotherton*, we note that "Tenn[essee] Code Ann[otated] [section] 55-9-402 [does not] require[] taillights to be maintained in the same condition that they were in when the automobile left the showroom or that taillights repaired with taillight repair tape are per se violations of [the statute]." Our decision is limited to the factual scenario presented herein, where a vehicle being operated with a white reverse light that becomes illuminated while the vehicle is in forward motion and the brakes are applied. In this particular case, the operation of the white reverse light during forward motion provided the authorities with at least a reasonable suspicion sufficient to justify an investigative stop to question the status of the brake lights if not probable cause to believe the operation of Appellant's brake lights violated the statutes governing such operation. Accordingly, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is reversed.

_____
JERRY L. SMITH, JUDGE