IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs April 3, 2018 at Jackson

### STATE OF TENNESSEE v. JAMES LARRY WILLIAMS

**Appeal from the Circuit Court for Williamson County**
**No. II-CR170166   James G. Martin III, Judge**

_____

### No. M2017-01830-CCA-R3-CD

_____

The Defendant, James Larry Williams, entered a guilty plea to driving under the influence (DUI), reserving a certified question of law challenging whether there existed sufficient probable cause that a violation of Tennessee Code Annotated section 55-8-123(1) had occurred or reasonable suspicion based upon the totality of the circumstances to justify a traffic stop of the Defendant's vehicle. Following our review, we affirm the judgment of the trial court

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and J. ROSS DYER, JJ., joined.

Walter W. Bussart, Lewisburg, Tennessee, for the appellant, James Larry Williams.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Kim R. Helper, District Attorney General; and Tristan R. P. Poorman and Christopher K. Vernon, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

### FACTUAL BACKGROUND

On March 13, 2017, the Williamson County Grand Jury returned an indictment charging the Defendant with DUI and DUI per se, which is driving under the influence with a blood alcohol content of .08% or greater. See Tenn. Code Ann. § 55-10-401(1), (2). On April 5, 2017, the Defendant filed a motion to suppress "any illegally obtained or inadmissible evidence," which was followed by a supplementary memorandum on June

26, 2017, specifying the evidence to be suppressed as the arresting officer's "dash cam video" and "all evidence flowing from the stop."

A hearing was held on the motion to suppress on July 7, 2017. At the hearing, Deputy William Harris of the Williamson County Sheriff's Office testified that shortly before midnight on April 28, 2016, he received a be-on-the-lookout report (BOLO) involving a silver Infiniti with a possible tag identification travelling southbound on Hillsboro Road. The deputy was at the intersection of Hillsboro Road and South Berry's Chapel Road when he observed a silver Infiniti turn onto Cotton Lane. Deputy Harris began to follow the vehicle and confirmed through dispatch that the tag number of the vehicle matched the tag number in the BOLO report. The deputy testified that while following the vehicle, he observed it "cross the fog line on the right side, and then bounce and cross the left double yellow line three times" prior to making the decision to stop the vehicle.

Deputy Harris's dash cam video was entered into evidence and played for the court. The deputy indicated to the court the times during the video at which he observed the vehicle's crossing the fog line and also crossing the center line.

On cross-examination, Deputy Harris conceded that the road was dark and did not have lighting, the road did not have shoulders, the lines were faded, mailboxes were close to the road, and the road "follow[ed] the contour[s] of the land . . . [with] dips[,] . . . mounds[,] and curves." The deputy also conceded that there would be times when a prudent driver would not be expected to "navigate this roadway perfectly within the lane." The deputy acknowledged that several of the residential driveways on that road were gravel driveways, but he denied observing any gravel in the road that night.

The Defendant offered as proof a portion of Deputy Harris's dash cam video that was digitally brightened for clarity. The State moved this video into evidence.

At the conclusion of proof, the Defendant argued that he travelled over the double yellow line because of the nature of the road, to intentionally avoid mailboxes that were close to the road, and to avoid gravel that had eroded into the road from driveways. The trial court then made the following findings of fact:

> The [c]ourt has been able to observe the video now twice. There was considerable weaving within the lane, there's no dispute about that at all. It was clear to the [c]ourt, from the observation of the video, that the driver of the vehicle, [the Defendant], crossed the center line on three occasions. The deputy indicated that there was also an occasion when the vehicle crossed the right fog line. That was not as clear to the [c]ourt as I observed the video, but it was clear to the [c]ourt that there was a crossing of the

center line on three occasions.  The [c]ourt believes, and finds, that based upon those facts and circumstances, there was a violation of state law and that this deputy had probable cause to make the stop.

The court's order overruling the motion to suppress similarly reflected that "the Defendant was weaving within his lane throughout the video," that "the Defendant clearly crossed the double [] yellow line on three separate occasions," and that "Deputy Harris testified he observed the Defendant cross the right fog line, but that observation is not clear from the video." The trial court concluded that "based on all the evidence" the deputy "had probable cause to initiate a traffic stop for violation of T[ennessee] C[ode] A[nnotated] [section] 55-8-123, [f]ailure to [m]aintain lane."

On August 10, 2017, the Defendant pled guilty to driving under the influence in violation of Tennessee Code Annotated section 55-10-401, with the two counts under the indictment to merge.  The Defendant was sentenced to eleven months and twenty-nine days, with forty-eight hours to serve and the remainder of the sentence on supervised probation.  As part of the guilty plea, the Defendant reserved with the consent of the State and the trial court the following certified question:

> Whether the stop of the Defendant's vehicle by Deputy William Harris of the Williamson County Sheriff's Department on April 28, 2016, violated Defendant's rights granted pursuant to the Fourth Amendment to the U. S. Constitution and Article I, Section [] 7 of the Tennessee Constitution and whether any evidence, statements and blood tests obtained as a result of said stop should be suppressed as the fruits of an unconstitutional seizure, due to the fact that there was no probable cause that a traffic violation ha[d] been committed under Tenn. Code Ann. § 55-8-231(1), and there was no reasonable suspicion based on the totality of the circumstances, where Defendant was observed driving on a narrow, hilly, curvy, shoulderless road with portions of unclear lane markers for a distance of approximately 3 miles at night?

(alterations in original).  The Defendant, the State, and the trial court are in agreement that the certified question is dispositive in this case.

## ANALYSIS

On appeal, the Defendant contends that he properly reserved a certified question of law and that the trial court erred in denying his motion to suppress.  The State agrees that the Defendant has properly reserved the certified question but asserts that the Defendant is not entitled to relief.  We note that the Defendant and the State recognize and agree in their briefs that, from the context of the case, the statutory citation within the

certified question was intended to be Tennessee Code Annotated section 55-8-123(1) and not section 55-8-231(1).

*Certified Question*

Tennessee Rule of Criminal Procedure 37(b)(2)(A) provides that a certified question may be reserved when:

> (A) [T]he defendant entered into a plea agreement under Rule 11(c) but explicitly reserved—with the consent of the state and of the court—the right to appeal a certified question of law that is dispositive of the case, and the following requirements are met:
>
> (i) the judgment of conviction or order reserving the certified question that is filed before the notice of appeal is filed contains a statement of the certified question of law that the defendant reserved for appellate review;
>
> (ii) the question of law as stated in the judgment or order reserving the certified question identifies clearly the scope and limits of the legal issue reserved;
>
> (iii) the judgment or order reserving the certified question reflects that the certified question was expressly reserved with the consent of the state and the trial court; and
>
> (iv) the judgment or order reserving the certified question reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case[.]

See also Tenn. R. Crim. P. 37(b)(2)(D); State v. Preston, 759 S.W.2d 647, 650 (Tenn. 1988).

Generally, a "question is dispositive when the appellate court must either affirm the judgment [of conviction] or reverse and dismiss [the charges]." State v. Dailey, 235 S.W.3d 131, 134 (Tenn. 2007) (internal quotations and citations omitted). "If the appellate court does not agree that the certified question is dispositive, appellate review should be denied." Preston, 759 S.W.2d at 651. "A certified question may be rendered nondispositive by the failure to raise an underlying issue when the determination of that underlying issue is necessarily the basis of the disputed question." State v. Prince Dumas, No. W2015-01026-CCA-R3-CD, 2016 WL 4083256, at *3 (Tenn. Crim. App. Aug. 1, 2016). This court "is not bound by the determination and agreement of the trial court, a defendant, and the State that a certified question of law is dispositive of the

-4-

case." Dailey, 235 S.W.3d at 134–35 (quoting State v. Thompson, 131 S.W.3d 923, 925 (Tenn. Crim. App. 2003)). This court "must make an independent determination that the certified question is dispositive." Id. at 135 (citing Preston, 759 S.W.2d at 651).

Our supreme court has held that a "dispositive certified question of law . . . must be stated so as to clearly identify the scope and the limits of the legal issue reserved." Preston, 759 S.W.2d at 650.

> [W]here questions of law involve the validity of searches and the admissibility of statements and confessions, etc., the reasons relied upon by [the] defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law and review by the appellate courts will be limited to those passed upon by the trial judge and stated in the certified question, absent a constitutional requirement otherwise.

Id.

Here, the Defendant's certified question is limited to whether there existed probable cause that the Defendant had violated Tennessee Code Annotated section 55-8-123(1) for failing to maintain his lane of travel or reasonable suspicion based upon the totality of the circumstance to justify the stop. The trial court's judgment incorporated by reference the agreed order, which set out the certified question and stated that the Defendant reserved the certified question with the express consent of both the trial court and the State. The agreed order also stated that the Defendant, the State, and the trial court believed that the certified question was dispositive of the Defendant's case. We also find that the certified question sufficiently limited the scope of the legal issue and that the certified question is dispositive of the Defendant's case. Thus, the Defendant has complied with the requirements of Preston and Tennessee Rule of Criminal Procedure 37, and we conclude that this issue is properly before this court.

*Suppression of Evidence*

The Defendant argues that the trial court abused its discretion when it denied his motion to suppress because the deputy did not have probable cause or reasonable suspicion to stop the Defendant for failure to maintain his lane of travel. The Defendant contends in his brief that this case is "solely . . . a 'probable cause' case" as this case "was not decided on reasonable suspicion." The Defendant, nevertheless, raises the issue of reasonable suspicion in his certified question. The State responds that the deputy had reasonable suspicion that the Defendant "left his lane of travel when it was practicable to remain there and/or left [his] lane of travel without first ascertaining that it was safe to do so" in violation of Tennessee Code Annotated section 55-8-123(1). The State also

-5-

submits that the deputy had probable cause to believe the Defendant "crossed the center line of the roadway" in violation of Tennessee Code Annotated section 55-8-115; however, that violation is outside the scope of the certified question and also the trial court's ruling.

> Our supreme court has stated:
>> The Fourth Amendment to the United States Constitution proscribes "unreasonable searches and seizures" and provides that "no Warrant shall issue, but upon probable cause . . . particularly describing . . . the persons . . . to be seized." Likewise, Article I, Section 7 of the Tennessee Constitution states that "the people shall be secure in their persons . . . from unreasonable searches and seizures." Because traffic stops constitute seizures entitling a vehicle's occupants to the full protections of the United States and Tennessee Constitutions, the authorities must act reasonable when initiating a traffic stop.
>>
>> The United States Supreme Court has interpreted this requirement to mean that the authorities must have probable cause or an "articulable and reasonable suspicion" to believe that a traffic violation has occurred when they initiate a traffic stop.

State v. Brotherton, 323 S.W.3d 866, 870 (Tenn. 2010) (internal citations omitted).

There are three levels of police-citizen interactions: (1) a full-scale arrest, which must be supported by probable cause in order to be valid; (2) a brief investigatory detention, which must be supported by a reasonable suspicion, based upon specific and articulable facts, of criminal wrong-doing; and (3) a brief "encounter" which requires no objective justification. State v. Day, 263 S.W.3d 891, 901 (Tenn. 2008). "Moreover, the distinction between a stop based on probable cause and a stop based on reasonable suspicion is not simply academic. . . . [R]easonable suspicion will support only a brief, investigatory stop." State v. Smith, 484 S.W.3d 393, 409 (Tenn. 2016).

A reasonable basis for a stop is something more than an "inchoate and unparticularized suspicion or 'hunch.'" Terry v. Ohio, 392 U.S. 1, 27 (1968). "The evaluation [of reasonable suspicion] is made from the perspective of the reasonable *officer*, not the reasonable *person*." Smith, 484 S.W.3d at 402 (quoting United States v. Quintana-Garcia, 343 F.3d 1266, 1270 (10th Cir. 2003)) (alteration and emphasis in original). "[B]ecause a court reviews the validity of a stop from a purely objective perspective, the officer's subjective state of mind is irrelevant, and the court may consider relevant circumstances demonstrated by the proof even if not articulated by the testifying officer as reasons for the stop[.]" Smith, 484 S.W.3d at 402 (internal citations omitted).

We note that this case does not address the issue of whether the Defendant's driving as observed by Deputy Harris provided probable cause or reasonable suspicion that the Defendant was driving under the influence in violation of Tennessee Code Annotated section 55-10-401. Although driving under the influence is the offense to which the Defendant pled guilty as a result of the stop, the deputy stated that he stopped the Defendant based upon the Defendant's failure to maintain his lane.

Tennessee Code Annotated section 55-8-123(1) provides: "A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety[.]" A violation of this statute has been criminalized as a Class C misdemeanor. Tenn. Code Ann. § 55-8-103. In determining the constitutionality of a traffic stop based on Tennessee Code Annotated section 55-8-123(1), we are guided by our supreme court's analysis of the statute in Smith. In Smith, our supreme court interpreted the language "as nearly as practicable" to mean that motorists "must not leave [their] lane any more than is made necessary by the circumstance requiring the lane excursion." 484 S.W.3d at 409. The court determined that officers usually would not be able to ascertain a motorist's reasoning for the lane excursion, but would have reasonable suspicion to investigate further. Id. at 410. The court rejected the bright-line rule that probable cause is always established by a lane excursion, id.; however, our supreme court "recognize[d] that some lane excursions may be so egregious that they will support probable cause to stop the motorist." Id. at 411 n.13.

A trial court's findings of fact are binding on this court unless the evidence in the record preponderates against them. State v. Echols, 382 S.W.3d 266, 277 (Tenn. 2012) (citing State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996)). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Id. The prevailing party is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing and all reasonable and legitimate inferences that may be drawn therefrom. Id. The trial court's application of law to the facts is reviewed under a de novo standard with no presumption of correctness. Id. (citing State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001)).

Using Smith as our guide, we conclude that, in the case under submission, the deputy was justified in stopping the Defendant's vehicle based on probable cause that a violation of Tennessee Code Annotated section 55-8-123(1) had occurred. Deputy Harris testified, and the video confirmed, that the Defendant's vehicle clearly crossed the center line on three occasions. The trial court found that these lane excursions were in conjunction with "considerable weaving within the lane" and established probable cause. Thus, in the trial court's opinion, the Defendant's lane excursions must have risen to the

level of egregiousness recognized by our supreme court that would establish probable cause that a vehicle was not driven as nearly as practicable within a single lane in violation of Tennessee Code Annotated section 55-8-123(1). See Smith, 484 S.W.3d at 411 n.13. The trial court did not find that the lane excursions were warranted by road conditions or hazards. Upon review of the record and the videos introduced at the suppression hearing, we find that the evidence does not preponderate against the egregious nature finding of the Defendant's lane excursions. We conclude that the trial court did not err when it denied the Defendant's motion to suppress evidence obtained as a result of the traffic stop.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____

D. KELLY THOMAS, JR., JUDGE