# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs August 20, 2014

## STATE OF TENNESSEE v. DYLAN M. YACKS

**Appeal from the Criminal Court for Washington County**
**No. 38131     Robert E. Cupp, Judge**

---

### No. E2013-02187-CCA-R3-CD - Filed January 13, 3015

---

The Defendant-Appellant, Dylan M. Yacks, entered a guilty plea to driving under the influence (DUI), <u>see</u> T.C.A. § 55-10-401 (1) (2012),[1] in exchange for a sentence of eleven months and twenty-nine days, which was suspended after service of two days confinement. As a condition of his guilty plea, the Defendant-Appellant properly reserved a certified question of law challenging the constitutionality of the stop and subsequent arrest. Upon our review, we reverse the judgment of the trial court and vacate the Defendant-Appellant's convictions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed; Convictions Vacated and Case Dismissed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, J., and DAVID A. PATTERSON, SP. J., joined.

Donald E. Spurrell, Johnson City, Tennessee, for the Defendant-Appellant, Dylan M. Yacks.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Tony Clark, District Attorney General; and Anthony Clark, Assistant District Attorney General, for the Appellee, State of Tennessee.

---

[1] This offense makes it unlawful for any person to drive an automobile on any public road or highway while "[u]nder the influence of any intoxicant ... that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of oneself which the driver would otherwise possess."

**OPINION**

The Defendant-Appellant was indicted for DUI following his April 27, 2012 arrest, which was initiated by a traffic stop. Soon after his arrest, he filed a motion to suppress claiming that the officer did not have reasonable suspicion to support the stop of his vehicle. At the motion to suppress hearing, Officer Mike Castineiras of the Johnson City Police Department testified that he and his partner observed the Defendant-Appellant driving through an empty parking lot. He said the vehicle "was reversing . . . in an attempt to make a turn in the parking lot itself and struck the . . . light pole in the parking lot." Officer Castineiras waited for the driver to exit the vehicle and assess the damage; however, no occupant exited the vehicle. The driver pulled back onto West Walnut Street, and the officer followed the vehicle to initiate a traffic stop. The officer conceded that when he initiated his emergency blue lights, he could not see the pole from his vantage point, and he was not aware of how much damage, if any, had occurred to the pole or the vehicle. The officer also confirmed that his vehicle had video recording capability; however, it did not have accompanying audio for the recording. On cross-examination, Officer Castineiras clarified that it was a noise produced by the impact from the vehicle striking the pole that drew his attention to the Defendant-Appellant's vehicle.

The Defendant-Appellant testified and denied hitting or striking a pole with his vehicle that would have created a noise on the date of the offense. On cross-examination, he admitted that he had been drinking and that his consumption of alcohol could have affected his memory of the night in question.

The video recording from the officer's vehicle, a video recording produced by the defense reconstructing a vehicle striking the same pole, and various photographs showing the vehicle, the pole, and the area where the offense occurred were all admitted as exhibits to the hearing. The Defendant-Appellant argued that the video recording from the officer's vehicle did not show that the Defendant-Appellant struck the pole. He argued that this was "obvious" because the car did not stop, and "there was no jolt." Based on the demonstrative video reconstructing the events on the night of the offense, defense counsel further argued that the Defendant-Appellant clearly did not hit the pole. He reasoned that hitting the pole would have caused the light at the top of the pole to shake, which was not reflected in the officer's video. The State argued that the demonstrative video was not an accurate reflection of the events in question because it was not produced from inside of the officer's patrol car, which was unable to capture the light at the top of the pole.

Throughout the hearings concerning this case,[2] the trial court distinguished an officer's mistake of law from an officer's mistake of fact. By use of several examples, including a wrongfully issued capias, the trial court explained that when a police officer believes that an individual has violated the law, as in this case, the officer has reasonable suspicion to stop that individual even if it is later determined that the officer was mistaken in his initial belief of wrongdoing. Defense counsel maintained, however, that an officer's mistaken belief of an individual's unlawful acts must be reviewed under an objective, rather than a subjective standard of reasonableness. In support of his argument that the officer's actions were objectively unreasonable, defense counsel pointed out that there was no violation of the law as evidenced by the video from the officer's vehicle. In response, the trial court clarified its ruling and stated that "there was nothing unreasonable about [the officer] saying he had observed [the vehicle] hit the pole and he hear[d] it." Alternatively, the State argued that even if the Defendant-Appellant did not hit the pole, the officer had reasonable suspicion to believe that he did. After several re-settings, the trial court ultimately denied the motion to suppress. In its oral findings of fact, the trial court cited several appellate decisions from this court and determined that Officer Castineiras was credible.[3]

The Defendant-Appellant subsequently entered a guilty plea and properly reserved the following certified question of law for our review:

> Whether the trial court erred in denying [the Defendant-Appellant's] motion to suppress as, at the time the officer conducted the warrantless seizure of the defendant's moving vehicle, no exception to the warrant requirement existed, in that, there was no probable cause or reasonable suspicion of criminal activity, and no consensual encounter as required by Article I, Section 7 of the Tennessee Constitution and the Fourth and Fourteenth Amendments to the Constitution of the United States.

## ANALYSIS

As in his motion to suppress, the Defendant-Appellant contends in this appeal that the arresting officer lacked reasonable suspicion to initiate a stop of his vehicle. In support of his claim, he points to several inconsistencies between the officer's affidavit of arrest, the testimony the officer provided at the motion to suppress hearing, and the video exhibits. In

---

[2] The hearing on the motion to suppress occurred on December 14, 2012, and March 4, 2013. The trial court held a separate hearing to issue a detailed oral ruling on June 17, 2013.

[3] There was no written order denying the Defendant-Appellant's motion to suppress contained in the record on appeal.

response, the State contends that the officer stopped the Defendant-Appellant based on violations of Tennessee Code Annotated sections 55-10-105 and 55-10-107, which collectively make it a crime to leave the scene of an accident involving damage to a fixture. The State insists that the stop was constitutional because the officer reasonably believed that the Defendant-Appellant had violated the law. In addition, the State submits that the trial court credited the testimony of the officer regarding his observations, and the record does not preponderate against the conclusion of the trial court. For the reasons that follow, we agree with the Defendant-Appellant.

The standard of review applicable to suppression issues involves a mixed question of law and fact. State v. Garcia, 123 S.W.3d 335, 342 (Tenn. 2003). It is well established that "a trial court's finding of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The Tennessee Supreme Court explained this standard in Odom:

> Questions of credibility of the witness, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld.

Id. However, this court's review of a trial court's application of the law to the facts is de novo with no presumption of correctness. State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001); (citing State v. Crutcher, 989 S.W.2d 295, 299 (Tenn. 1999); State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997)). The defendant bears the burden of showing that the evidence preponderates against the trial court's findings.

The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect individuals from unreasonable searches and seizures. See U.S. Const. amend. IV; Tenn. Const. art. I, § 7. A warrantless search or seizure is presumed unreasonable, and evidence obtained as a result will be suppressed "unless the prosecution demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." Yeargan, 958 S.W.2d at 629 (citing Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971)). The stop of a vehicle and the detention of individuals during the stop amounts to a seizure for purposes of both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution and is thus subject to the reasonableness requirement. Whren v. United States, 517 U.S. 806, 809-10 (1996); State v. Brotherton, 323 S.W.3d 866,

870 (Tenn. 2010). Law enforcement authorities must have probable cause or an "articulable and reasonable suspicion" to believe that a traffic violation occurred when they initiate a traffic stop without a warrant. Id. Reasonable suspicion exists when "specific and articulable facts . . . taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio, 392 U.S. 1, 21 (1968). A mere "inchoate and unparticularized suspicion or 'hunch'" is not enough to generate reasonable suspicion. Id.

The Tennessee Supreme Court has defined reasonable suspicion as a "particularized and objective basis for suspecting the subject of a stop of criminal activity." State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000) (citing Ornelas v. Unites States, 517 U.S. 690, 696 (1996)). In determining whether a reasonable suspicion is present, the court must consider the totality of the circumstances, including, but not limited to, the officer's personal observations and "rational inferences and deductions that a trained officer may draw from the facts and circumstances known to him." Yeargan, 958 S.W.2d at 632. Reasonable suspicion for a traffic stop will be found to exist "only when the events which occurred leading up to the stop would cause an objectively reasonable police officer to suspect criminal activity on the part of the individuals stopped." State v. Levitt, 73 S.W.3d 159, 172 (Tenn. Crim. App. 2001) (citing Ornelas, 517 U.S. at 695).

Sections 55-10-105 and 55-10-107(a) of Tennessee Code Annotated, the traffic laws involved in this case, provide as follows:

> **Fixtures**. The driver of any vehicle involved in an accident resulting only in damage to fixtures or other property legally upon or adjacent to a highway or on the premises of any shopping center . . . that are generally frequented by the public at large, shall take reasonable steps to locate and notify the owner or person in charge of the property of that fact, the driver's name, address, and the registration number of the vehicle that the driver was driving, and shall, upon request and if available, exhibit the driver's license . . . and shall make report of the accident when and as required in § 55-10-107.

Id. § 55-10-105.

> **Reports.** (a) The driver of a vehicle that is in any manner involved in an accident resulting in bodily injury to or death to any person, or in which damage to the property of any one (1) person, including the driver's, in excess of four hundred dollars ($400) is sustained, shall within twenty (20) days after the accident, forward a written report of the accident to the department of safety; provided, that persons making written reports to the department

-5-

pursuant to § 55-12-104 shall not be required to make any additional report pursuant to this section, § 55-10-109 or § 55-10-111.

Id. § 55-10-107.

The trial court did not issue an order outlining its findings of fact and conclusions of law. However, citing Brotherton and other relevant authorities, the trial court issued a detailed oral ruling which provided, in pertinent part, as follows:

The defendant was in his vehicle and was getting ready to leave and the officer testified that the defendant backed into a pole there on the road and he went to pull him over based on him not failing [sic] to stop based upon that hitting a fixture on the road under that statute.

. . . .

[The officer] heard the noise I think is what he said. And I put this in the record before that the issue of [credibility] is with this court and this court granted [credibility] to that officer's testimony and what he testified to. . . . [Trial counsel] filed that motion [to suppress] and among other things submitted a video that shows . . . it didn't happen. It couldn't have happened based upon the video which is in the record, and that was the question before the court.

. . . .

[The officer] had a reasonable suspicion that the . . . pole had been hit and based upon that the court denied the defendant's motion to suppress. . . . [T]he court ruled . . . irrespective of what the film showed that you showed [sic] the officer said that he observed the vehicle bump into the pole. Secondly, that he heard the thud from that and based upon those two things he made the stop.

. . . .

Even if [the officer] was wrong . . . and the state's not contending that he was wrong. They're contending that the thing really happened. I'm saying it doesn't matter.

As an initial matter, we agree with the trial court's assessment of the law applicable to this case. An officer's mistake of fact will not likely negate a finding of reasonable

suspicion, so long as that mistake is objectively reasonable. See, e.g., Illinois v. Rodriguez, 497 U.S. 177, 185-86 (1990) ("It is apparent that in order to satisfy the 'reasonableness' requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government – whether the magistrate issuing a warrant, the police officer executing a warrant, or the police officer conducting a search or seizure under one of the exceptions to the warrant requirement – is not that they always be correct, but that they always be reasonable."). Indeed, in Tennessee, "[a] showing of reasonable suspicion does not require an actual violation of law because 'Terry accepts the risk that officers may stop innocent people' to investigate further." Brotherton, 323 S.W.3d at 871 (quoting Illinois v. Wardlow, 528 U.S. 119, 126 (2000)). Accordingly, whether the Defendant-Appellant violated sections 55-10-105, -107 is not at issue. Instead, the question presented is whether it was objectively reasonable for the officer to have believed that the Defendant-Appellant was involved in a vehicle accident resulting in damage to the lighting fixture and failed to notify the owner of this fact. Id.; see also United States v. Hughes, 606 F.3d 311, 320 (6th Cir. 2010); United States v. Chanthasouxat, 342 F.3d 1271, 1276 (11th Cir. 2003) ("A traffic stop based on an officer's incorrect but reasonable assessment of facts does not violate the Fourth Amendment.").

In this case, the officer provided minimal testimony regarding his observations on the night of the offense. He conceded that he did not observe the pole or any damage to it prior to stopping the Defendant-Appellant.[4] The sole basis for the stop was a nondescript sound the officer said he heard when the vehicle struck the pole. Interestingly, there was no sound accompanying the video from the officer's vehicle until after he initiated the stop. The officer agreed that the video from his vehicle recorded the Defendant-Appellant striking the pole. For the first 24 seconds of the video, the Defendant-Appellant is turning his vehicle around in a parking lot to face the street and stopping at various points to facilitate the turn. He pulls forward and reverses the vehicle twice before exiting onto the street. The back of the Defendant-Appellant's vehicle is extended beyond the pole, such that the pole appears closer to and above the right side cargo area of the vehicle. The officer is not shown the video during his testimony, and we are unable to discern at what point he believed the Defendant-Appellant struck the pole. As the Defendant-Appellant is maneuvering, the vehicle does not come into contact with the pole or a nearby concrete enclosure, which contains hedges and another pole holding a business sign. While the Defendant-Appellant is turning his vehicle, the pole does not move, the light emanating from the pole onto the ground does not move, and the vehicle does not jolt or abruptly stop. The Defendant-Appellant positions his vehicle and proceeds to drive down the street in an uneventful manner. While the video neither impeaches nor corroborates the officer's testimony, our

---

[4] It is unclear from the record whether the pole referred to is a light, telephone, or utility pole.

review does not reveal the Defendant-Appellant striking the pole or any other evidence that an accident occurred.

Moreover, the reconstructive video demonstrates that a vehicle must be positioned in front of the pole in order to strike it. As the vehicle strikes the pole, it clearly sways and simultaneously makes a noticeable sound when hit. A sign attached to the pole in the reconstructive video, which was not on the pole on the night of the offense, moves when the pole is hit. Additionally, in the first reconstruction video, which was filmed at dusk, the light shining on the ground from the pole moves as the vehicle strikes the pole. Finally, the vehicles in the reconstructive videos all come to abrupt stops when they hit the utility pole. Although the degree of force exerted in the demonstration videos compared to that used on the night of the offense may be arguable, none of these observations are apparent from the officer's video recording.

Upon our review of the record, we conclude that the preponderance of the evidence presented at the hearing does not support the judgment of the trial court. Accordingly, we hold that as a matter of law there was no reasonable suspicion to stop the Defendant-Appellant. The only evidence supporting reasonable suspicion was the sound the officer heard drawing his attention to the Defendant-Appellant's vehicle. This sound certainly may have warranted further observation of the Defendant-Appellant and his vehicle. However, prior to the stop, the officer admittedly made no efforts to determine whether an accident occurred or whether there was any damage to the utility pole. The officer also did not indicate any other articulable facts such as movement of the pole, an abrupt stop by the vehicle, or suspicious behavior by the Defendant-Appellant. In our view, the officer's nondescript audible observation, standing alone, amounts to no more than an "inchoate and unparticularized suspicion or 'hunch,'" which is not enough to generate reasonable suspicion sufficient to justify an investigative stop. Garcia, 123 S.W.3d at 344. Because we cannot say that it was objectively reasonable for the officer to believe that the Defendant-Appellant violated sections 55-10-105, -107 when the Defendant-Appellant did not get out of his vehicle after the officer heard a noise, the stop of the Defendant-Appellant was unconstitutional. The judgment of the trial court is reversed, and the Defendant-Appellant's conviction is vacated.

## CONCLUSION

Based on the above authority and analysis, the judgment of the trial court is reversed and the conviction in this case is vacated and dismissed.

_____
CAMILLE R. McMULLEN, JUDGE