# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs December 9, 2014

## STATE OF TENNESSEE v. CHARLIE E. MULLICAN

**Appeal from the Circuit Court for Warren County**
**No. M14237     Larry B. Stanley, Jr., Judge**

---

**No. M2014-01122-CCA-R3-CD - Filed March 4, 2015**

---

Defendant, Charlie E. Mullican, pled guilty pursuant to a negotiated plea agreement, to driving under the influence of an intoxicant (DUI), second offense, and possession of a handgun while under the influence of intoxicants. He properly reserved a certified question of law for appeal. The question of the law is dispositive of the case. After a thorough review we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which ALAN E. GLENN and TIMOTHY L. EASTER, JJ., joined.

Bud Sharp, McMinnville, Tennessee, for the appellant, Charlie E. Mullican.

Herbert H. Slatery, III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Lisa S. Zavogiannis, District Attorney General; and Darrel Julian, Assistant District Attorney General; for the appellee, the State of Tennessee.

## OPINION

### Background

After he was indicted for second offense DUI, second offense driving with a blood or breath alcohol content of 0.08% or greater, possession of a handgun while under the influence of intoxicants, and violation of the light law, Defendant filed a motion to suppress all evidence obtained as a result of the vehicle stop which led to his arrest. In the motion, Defendant asserted that the stop of his vehicle was not based upon reasonable suspicion. A suppression hearing was held, and the trial court denied the motion. Defendant entered his

guilty plea but reserved for appeal, pursuant to Tennessee Rule of Criminal Procedure 37(b)(2)(A)(i)-(iv), the following certified question of law:

> Whether the State of Tennessee had reasonable suspicion to stop the Defendant's automobile at night time when both headlights are required to be on and working because of the officer's belief based on his perception that there was a headlight inoperable; that upon further investigation conducted by the defendant and his attorney in the presence of a detective both headlights were found to be in working condition some months later after the vehicle was seized by the State the night of the stop and had been stored at a unsecured impound lot; accordingly, whether this stop and all evidence from this stop should be suppressed.

*Facts*

Officer Eddie Caldwell of the McMinnville Police Department testified that at approximately midnight on May 4, 2013, he was on patrol on "New Smithville and the bypass" when he observed a silver Honda with the driver's side headlight out traveling southbound on New Smithville Highway. Officer Caldwell proceeded through the red light where he had been stopped and followed the car into the Waffle House parking lot and made contact with Defendant who was driving the vehicle. Defendant's car was taken to the police department's impound lot.

Officer Stuart Whitman testified that within "a couple months" before the suppression hearing on January 22, 2014, he met with Defendant's trial counsel at the impound lot to look at Defendant's car. Officer Whitman turned the headlights on, and at that time, both headlights were working.

On cross-examination, Officer Whitman testified that the City of McMinnville's impound lot was located behind the Public Works Building on Belmont Drive, and the property was also shared with the animal control division. He noted that there was a fence surrounding the lot with two gates "going into the impound lot there." Officer Whitman testified that the gates were unlocked during business hours, and he did not know if they were locked after business hours. He did not know if there was any surveillance equipment on the lot. Officer Whitman also noted that there was no lighting in the back corner of the property and that Defendant's vehicle was parked in the far left corner of the lot. Officer Whitman did not know who had access in and out of the property. He noted that the gates to the property are unguarded. On redirect examination, Officer Whitman testified that there had been previous thefts from some of the vehicles parked in the impound lot.

Defendant testified that on the night of his arrest, both headlights on his vehicle were in working order, and he told Officer Caldwell that they were both working. Defendant testified that he later accompanied an officer to the impound lot to retrieve some of his belongings but he never broke into the lot or had any one else enter the lot to repair his headlight.

On cross-examination, Defendant testified that he did not have a chance to show Officer Caldwell that his headlight was working because the officer noticed an odor of alcohol. Defendant testified that when he accompanied Officer Holt to the impound lot to retrieve his belongings, the gates were locked.

During the State's rebuttal proof, Captain Derwin Adcock of the McMinnville Police Department testified he was the division commander over the criminal investigation division, and he was also a custodian of evidence. He said that the impound lot on Belmont Drive was shared with the Public Works Department and Animal Control. Captain Adcock testified that the only security measure at the impound lot was a fence, and he noted that there were two entrances and exits to the lot and that employees of the police department, public works, and others had access to the lot. Captain Adcock did not know if the gates remained locked at all times, and he was not aware of any guard or video surveillance equipment on the property. He noted that the lighting in the impound lot was limited, and there had been past problems with controlling access to the area. Captain Adcock testified that he considered the impound lot to be an unsecured area.

At the conclusion of all testimony, the trial court ruled as follows:

I think the law is pretty clear. The question is whether or not the officer believed he saw a vehicle traveling without a headlight, which I assume both parties acknowledge is required. His testimony was - - doesn't appear to have any bias - - that he saw this vehicle proceed through the intersection without a driver's side headlight on or illuminated when it was supposed to be. I don't have any idea about what happened to the vehicle afterwards. I don't have any reason to believe that he did not believe what he saw, that there was a vehicle traveling through the intersection without a light on. There could be a lot of explanations for why it would not be on at one point and on at another. The driver could have turned it on afterwards. There could have been a short that comes and goes with the vehicle. I honestly don't know. It could have been fixed later. I'm not accusing this gentleman of doing anything like that. There is no proof that he did but I think at the time the officer saw the vehicle his testimony, again no reason to doubt him, that he saw a vehicle traveling at midnight with no lights on when they're required to be.

-3-

So I would respectfully overrule the motion to suppress, that the officer did have reasonable suspicion to stop the vehicle at the time that he did.

**Analysis**

Our review shows that Defendant properly reserved a certified question of law for appeal following his guilty plea in compliance with Tenn. R. App. P. 37(b)(2)(A).

A trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996); *State v. Jones*, 802 S.W.2d 221, 223 (Tenn. Crim. App. 1990). Furthermore, questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. The application of the law to the facts as determined by the trial court is a question of law which is reviewed de novo on appeal. *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

The Fourth Amendment to the United States Constitution and article 1, section 7 of the Tennessee Constitution protect against unreasonable searches and seizures. *See State v. Downey*, 945 S.W.2d 102, 106 (Tenn. 1997). An automobile stop constitutes a seizure within the meaning of these constitutional provisions. *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 450 (1990); *State v. Pulley*, 863 S.W.2d 29, 30 (Tenn. 1993); *State v. Binion*, 900 S.W.2d 702, 705 (Tenn. Crim. App. 1994). The police may stop a vehicle if they have reasonable suspicion based upon specific and articulable facts that an occupant is violating or is about to violate the law. *See United States v. Brignoni–Ponce*, 422 U.S. 873 (1975); *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992); *Hughes v. State*, 588 S.W.2d 296, 305 (Tenn. 1979). In determining whether an officer's reasonable suspicion is supported by specific and articulable facts, "a court must consider the totality of the circumstances-the entire picture." *State v. Moore*, 775 S.W.2d 372, 377 (Tenn. Crim. App. 1989).

We must strictly limit our review to the *precise* issue certified as the question of law reserved for appeal. *State v. Day*, 263 S.W.3d 891, 999 (Tenn. 2008) ("As we have stated repeatedly, no issue beyond the scope of the certified question will be considered."); *State v. Preston*, 759 S.W.2d 647, 650 (Tenn. 1988); Tenn. R. Crim. P. 37(b)(2)(A)(ii) ("the question of law as stated in the judgment or order reserving the certified question identified clearly the scope and limits of the legal issue reserved"). Defendant's issue is framed such that he asserts Officer Caldwell lacked "reasonable suspicion" of a crime being committed by Defendant to justify the stop. As noted above, for constitutional purposes the stop began as soon as Officer Caldwell activated his blue lights. *State v. Williams*, 185 S.W.3d 311, 317-18 (Tenn. 2006). An investigatory stop of a vehicle does not require an officer to have

probable cause of a crime being committed. All that is constitutionally required to justify a stop of a vehicle is for the officer to have reasonable suspicion, based upon specific and articulable facts, that an occupant of the vehicle is violating or is about to violate the law. *Watkins*, 827 S.W.2d at 294. Reasonable suspicion to justify a stop of a vehicle is a subjective standard, to be determined by looking at the totality of the circumstances surrounding the stop. *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000).

Defendant argues that both of his headlights were working at the time of the stop; therefore, the reason given by Officer Caldwell for stopping him "had to be invalid, as the reason given for the stop was not that the Appellant appeared to be intoxicated, but that one of his headlights was out." Defendant further argues that "[i]f his headlight was not out, then there is no way that the arresting officer can point to specific and articulable facts that would reasonably warrant intrusion."

In the case *sub judice* the trial court obviously accredited the testimony of Officer Caldwell that he observed Defendant driving with one headlight inoperable at midnight in violation of T.C.A. § 55-9-402(a)(1) which provides that "[e]very motor vehicle other than a motorcycle, road roller, road machinery or farm tractor shall be equipped with at least two (2) and not more than four (4) headlights, with at least one (1) on each side of the front of the motor vehicle," and T.C.A. § 55-9-406(a) which further provides:

> The headlights of every motor vehicle shall be so constructed, equipped, arranged, focused, aimed, and adjusted, that they will at all times mentioned in § 55-9-401, and under normal atmospheric conditions and on a level road produce a driving light sufficient to render clearly discernible a person two hundred feet (200') ahead, but shall not project a glaring or dazzling light to persons in front of such headlights. Such headlights shall be displayed during the period from one half (½) hour after sunset to one half (½) hour before sunrise, during fog, smoke, or rain and at all other times when there is not sufficient light to render clearly discernible any person on the road at a distance of two hundred feet (200') ahead of the vehicle.

This Court has held that such driving in similar situations provides at least reasonable suspicion of criminal activity, based upon specific and articulable facts, or probable cause of a crime being committed. *See State v. Johnathan R. Johnson,* No. M2013-00301-CCA-R3-CD, 2014 WL 2016712, at *7 (Tenn. Crim. App. May 15, 2014)(Officer had reasonable suspicion to stop the defendant when the officer observed Defendant's taillight inoperable and not in compliance with the applicable statute); *State v. Raleigh Kristopher Frye,* No. M2011-00395-CCA-R3-CD, 2012 WL 1656989, at *5(Tenn. Crim. App. May 9, 2012)(Officer had reasonable suspicion to stop the defendant's vehicle when defendant drove

without his headlights on for some period of time and crossed the center line on at least two occasions); and *State v. Deshawn Wentz*, No. M2010-01668-CCA-R3-CD, 2011 WL 3654539, at *4 (Tenn. Crim. App. Aug. 19, 2011)(Trial court specifically accredited the officer's testimony that the defendant's vehicle's taillights were not on over that of the defendant's testimony and properly denied the defendant's motion to suppress).

What is observed by the officer need not be sufficient evidence to prove guilt beyond a reasonable doubt of the traffic offense. In the context of a stop based upon an officer's perception that a taillight's faulty condition was in violation of T.C.A. § 55-9-402, our supreme court has held,

> the proper inquiry should have been whether [the arresting officer] had an "articulable and reasonable suspicion" that [the defendant's] taillight violated [T.C.A.] § 55-9-402, **not whether [the defendant's] taillight, in fact, violated [T.C.A.] § 55-9-402**. *See United States v. Johnson*, 242 F.3d [707] [ ] 709-710 [(6th Cir. 2001)] ("[T]he question is not whether a Tennessee court would have found defendant guilty of the traffic infraction, but whether the officers had probable cause to believe that a violation had occurred.")

*State v. Brotherton*, 323 S.W.3d 866, 871 (Tenn. 2010)(emphasis added).

The evidence does not preponderate against the trial court's ruling that Officer Caldwell had "reasonable suspicion" to stop Defendant's vehicle based upon the officer's observation of an inoperable headlight. The fact that the headlight was functioning properly approximately two months before the suppression hearing, after Defendant's car had been sitting in an unsecured impound lot for several months after his arrest, does not render the stop illegal nor does it prove that the headlight was functioning properly on the night of May 4, 2013. The trial court properly denied Defendant's motion to suppress. Defendant is not entitled to relief in this appeal.

The judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, PRESIDING JUDGE