IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 10, 2015 Session

**STATE OF TENNESSEE v. JEFFERY D. AARON**

**Appeal from the Circuit Court for Williamson County**
**No. ICR017709     Michael Binkley, Judge**

---

**No. M2014-01483-CCA-R3-CD – Filed July 10, 2015**

---

Defendant, Jeffery D. Aaron, was indicted by the Williamson County Grand Jury for driving under the influence of an intoxicant (DUI), and driving while his blood alcohol concentration was .08 percent or more (DUI per se). Prior to trial, the trial court granted Defendant's motion to suppress evidence obtained as a result of the state trooper's stop of Defendant. The State appeals. After a thorough review of the record, relying upon our supreme court's decision in *State v. Brotherton*, 323 S.W.3d 866 (Tenn. 2010), we conclude that the trooper had reasonable suspicion, based on specific and articulable facts, that Defendant had committed or was about to commit the Class C misdemeanor offense set forth in Tennessee Code Annotated section 55-8-123(1). Accordingly, the judgment of the trial court is reversed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which ROBERT L. HOLLOWAY, JR. and TIMOTHY L. EASTER, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Kim R. Helper, District Attorney General; and Carlin Hess, Assistant District Attorney General, for the appellant, the State of Tennessee.

Mark L. Puryear III, Franklin, Tennessee, for the appellee, Jeffery D. Aaron.

**OPINION**

*Motion to suppress*

State trooper Charles Achinger testified that that on July 7, 2013, at 12:21 a.m., he observed a vehicle "make a choppy, hesitant turn to turn right" at the intersection of Moores Lane and Carothers Parkway in Williamson County. Trooper Achinger testified,

"it appeared that the person was turning and then maybe let go of the steering wheel and grabbed it again to turn some more. And did that a couple of times. And that's what drew my attention to the vehicle." Trooper Achinger testified that the driver of the vehicle "reached across with his right hand and flipped [him] off" as he drove by. Trooper Achinger testified that he was "100 percent positive" that the driver raised his middle finger at him. Trooper Achinger waited until the traffic light turned green, made a u-turn at the intersection, and "attempted to catch up to the vehicle to observe more driving actions."

In his testimony while the dashboard video recording from his patrol car was being played, Trooper Achinger described his observations as follows:

> When I turned around there was a vehicle in between us. As I went around the first curve, I observed – it is going to be the second vehicle will be the black Ford Explorer.
>
> It is going to be the second vehicle. As they come around the corner, you will see that the Ford Explorer is shading to the left by the continuous left turn lane. When we get up a little further and I zoom the camera in, the vehicle then drifts over to the right. And then right before we go over – there's a hill crest there with a flashing light – he drifts back over to the left. When I came back over that hill crest, I couldn't see the vehicle very well, so I shade[d] my patrol vehicle to the left because there is a car in between us. And that's when I observed the vehicle drift over into the continuous turn lane without using a signal.

Trooper Achinger observed the vehicle for "about a mile. It wasn't very long at all." He testified that the driver "was weaving within his lane of travel." Trooper Achinger acknowledged that he did not make the decision to stop the vehicle after he observed the "choppy turn" and the driver's offensive hand gesture. He activated his blue lights and initiated the traffic stop after he observed the vehicle weaving within its lane of travel and drift into the turn lane. Trooper Achinger testified that his reasons for stopping the vehicle included "the choppy turn, the fact that he did flip me off, and then the weaving within the roadway and then when he drifted over into the continuous turn lane." On cross-examination, Trooper Achinger agreed that the weaving he observed was within the vehicle's lane of travel until the vehicle crossed into the turning lane. He testified that he did not observe Defendant speeding or violating any other traffic laws.

The dashboard video recording begins with Trooper Achinger's vehicle stopped at a red light. Our observation of the exhibit reveals the following. Trooper Achinger made a u-turn and began driving in the same direction as Defendant. Another vehicle was

2

driving between Trooper Achinger and Defendant. Defendant's vehicle can be seen weaving one time within his lane, and Defendant's vehicle appeared to have touched the dividing line for the center turning lane. A short distance later, Defendant's vehicle is seen briefly crossing once over the dividing line. Trooper Achinger then activated his blue lights, passed the car immediately in front of him, and stopped Defendant's vehicle.

At the conclusion of the hearing, the trial court made the following findings of fact and conclusions of law:

> Thank you. All right, Gentlemen. I know at least on a professional basis, Sergeant Achinger – and I find him to be incredibly candid, very honest and call[s] it like he sees it. I have an absolute respect for Sergeant Achinger, always have, always will.
>
> Now, what I have got to look at here are these points that Sergeant Achinger testified to; that is the choppy turn, the flipping of the bird; weaving inside of his lane and then drifting into the turn lane, towards the turn lane. You know, the most compelling evidence to me is the video. I mean, it speaks for itself. And that is probably the very best evidence I have in front of me. These cases are difficult, you know, these weaving cases inside the travel lane and some outside, some touching, some not and it's close, it is always close.
>
> All right, with that said, you know, I have got to make a decision here. I'm going to make it. I just find by a preponderance of the evidence that these incidences do not rise to the level of reasonable suspicion to turn on the blue lights, pull this man over and then conduct whatever happened after that.
>
> Again, I know they are close. I absolutely respect Sergeant Achinger, has nothing to do with his abilities and his job that he does, which is excellent as far as I'm concerned. But you know, I've got to be objective. I've got to make the call based on the totality of the circumstances. And my call is that I do not find that this raises to a preponderance of the evidence that there was reasonable suspicion under the circumstances to pull this gentleman over.

*Analysis*

The State contends that the trial court erred by granting Defendant's motion to suppress. The State asserts that based upon specific and articulable facts, Trooper Achinger had reasonable suspicion that Defendant had committed a criminal offense.

In reviewing the trial court's decision on a motion to suppress, we review the trial court's legal conclusions de novo. *State v. Northern*, 262 S.W.3d 741, 747 (Tenn. 2008). In doing so, we give deference to the trial judge's findings of fact unless the evidence preponderates otherwise. *Id.*; *see State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001); *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). "'[C]redibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact.'" *Northern*, 262 S.W.3d at 747-48 (quoting *Odom*, 928 S.W.2d at 23). In reviewing the findings of fact, evidence presented at trial may "'be considered by an appellate court in deciding the propriety of the trial court's ruling on the motion to suppress.'" *State v. Garcia*, 123 S.W.3d 335, 343 (Tenn. 2003) (quoting *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001)). The prevailing party on the motion to suppress is afforded the "'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *Northern*, 262 S.W.3d at 748 (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)); *see State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000); *Odom*, 928 S.W.2d at 23.

The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect citizens against "unreasonable searches and seizures." In general, warrantless searches and seizures are presumptively unreasonable and any evidence obtained as a result of the warrantless action is subject to suppression. *State v. Richards*, 286 S.W.3d 873, 878 (Tenn. 2009). However, if the state "demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to an exception to the warrant requirement," the evidence will not be suppressed. *Keith*, 978 S.W.2d at 865. One of the exceptions is met when a law enforcement officer temporarily seizes a citizen if the officer "has a reasonable suspicion, based on specific and articulable facts, that a criminal offense has been, is being, or is about to be committed." *Id.*

While impossible to precisely define, "reasonable suspicion" has been recognized as "'common sense, nontechnical conceptions'" dealing "'with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act.'" *Keith*, 978 S.W.2d at 867 (quoting *Ornelas v. U.S.*, 517 U.S. 690, 695, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996)). However, an officer's "inchoate and unparticularized suspicion or hunch" is not sufficient reasonable suspicion. *State v. Day*,

263 S.W.3d 891, 907 (Tenn. 2008) (quoting *Terry v. Ohio*, 392 U.S. 1, 27, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)) (internal quotations omitted).

Analyzing "whether reasonable suspicion existed in a particular traffic stop is a fact-intensive and objective analysis." *Garcia*, 123 S.W.3d at 344. In determining whether an officer had reasonable suspicion, "a court must consider the totality of the circumstances." *Id*. "'[R]easonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.'" *Keith*, 978 S.W.2d at 866 (emphasis omitted) (quoting *State v. Pulley*, 863 S.W.2d 29, 32 (Tenn. 1993)). Reasonable suspicion does not require "'proof of wrongdoing,'" but it does require some "'minimal level of objective justification for making the stop.'" *Id*. at 867 (quoting *U.S. v. Sokolow*, 490 U.S. 1, 7 (1989)).

Tennessee Code Annotated section 55-8-123(a), a violation of which is a Class C misdemeanor offense, requires that "[a] vehicle shall be driven as nearly as practicable entirely within a single lane." Defendant relies upon the holding in *State v. Ann Elizabeth Martin*, No. E1999-01361-CCA-R3-CD, 2000 WL 1273889 (Tenn. Crim. App. Sept. 8, 2000), in which a panel of this court reversed the defendant's conviction for DUI upon concluding that the officer who stopped the defendant did not have "reasonable suspicion" of commission of a criminal offense to justify the stop. *Id*. at *1. The panel observed that "it is not unusual for a vehicle to enter a turn lane and then return to a travel lane without making a turn. Nor do we think that a vehicle that briefly crosses the solid white line on the shoulder is committing a traffic violation." *Id*.

However, in *State v. Brotherton*, 323 S.W.3d 866 (Tenn. 2010), our supreme court determined that a state trooper had reasonable suspicion, based upon specific and articulable facts, to stop the defendant's vehicle for a violation of the Class C misdemeanor offense in Tennessee Code Annotated section 55-9-402(b), which mandates that a motor vehicle must be equipped on the rear of the vehicle with two red tail lamps and two red stoplights, and the red stoplight "shall not project a glaring or dazzling light." In *Brotherton*, the trooper observed a "bright light" shining from the passenger side taillight area of the defendant's vehicle. Citing *Illinois v. Wardlow*, 528 U.S. 119, 126 (1996), the *Brotherton* court held that "[a] showing of reasonable suspicion does not require an actual violation of the law because '*Terry* accepts the risk that officers may stop innocent people' to investigate further.'" 323 S.W.3d at 871.

> Our supreme court in *Brotherton* clearly emphasized that in both "probable cause" for arrest (or citation) cases and in "reasonable suspicion for investigatory stop" cases involving Class C misdemeanor

5

traffic offenses, it is not required that what the officer observes must be enough evidence to support beyond a reasonable doubt that a driver has violated the Class C misdemeanor offense. Thus, for "probable cause" or "reasonable suspicion" analysis of a stop based upon a possible violation of T.C.A. § 55-8-123(1), the conclusion in *Ann Elizabeth Martin* that "a momentary drift out of lane [does not constitute] driving a vehicle outside of a single lane" is misplaced. *Id*. at *6. To the extent this holding in *Ann Elizabeth Martin* can be construed to apply to cases where the issue is whether "probable cause" or "reasonable suspicion" exists to justify a vehicle stop, based upon a violation of T.C.A. § 55-8-123(1), the unpublished opinion should not be followed.

*State v. Linzey Danielle Smith*, M2013-02818-CCA-R3-CD, 2015 WL 412972, at *8 (Tenn. Crim. App. Feb. 2, 2015), *perm. app. granted* (Tenn. May 14, 2015).

In the case *sub judice*, the trial court heard Trooper Achinger's testimony about his personal observations and reviewed the dashboard video recording. The trial court obviously accredited Trooper Achinger's testimony, finding that Trooper Achinger was "incredibly candid, very honest and call[s] it like he sees it." The trial court also found that "[t]he most compelling evidence" was the video recording of Defendant's driving. The trial court did not make a specific finding that Defendant did or did not cross the yellow line. However, this court is equally as capable as the trial court of reviewing the video evidence. The video clearly shows that Defendant's vehicle weaved once within his lane of traffic, and Defendant's vehicle appeared to touch the yellow line dividing Defendant's lane from the center turning lane. Defendant's vehicle then weaved again to the left and clearly crossed once over the dividing yellow line.

Under our supreme court's analysis in *Brotherton*, the proper inquiry is not whether there is evidence beyond a reasonable doubt that Defendant violated T.C.A. § 55-8-123(1). Rather the inquiry is whether Trooper Achinger's observations were specific and articulable facts that support a reasonable suspicion that Defendant committed the traffic offense. Based on the evidence, Trooper Achinger's observations were sufficient to establish reasonable suspicion to justify a stop of Defendant for a violation of Tennessee Code Annotated section 55-8-123(1), even if the evidence turns out not to be legally sufficient to support a conviction for the traffic offense. We emphasize that this court's ruling in this case relies *solely* upon the evidence that Defendant's vehicle actually crossed over the line and *into* the continuous turn lane. Merely "touching" the line alone would not be sufficient to justify the stop based upon possible violation of T.C.A. § 55-8-123(1).

6

The State argues that the additional evidence that Trooper Achinger also observed Defendant make a "choppy" turn and make an offensive hand gesture to Trooper Achinger, "considered together [with the video evidence of Defendant touching and crossing the center line], are sufficient to call the defendant's sobriety into question." The State cites *State v. Watson*, 354 S.W.3d 324 (Tenn. Crim. App. 2011), in which this court held that the officer's testimony that he observed the defendant in one-half of a mile cross the fog line twice and cross the center line once established reasonable suspicion to justify an investigatory stop. 354 S.W.3d at 331.

We conclude that Defendant's offensive hand gesture did not provide grounds to justify Trooper Achinger's stop of Defendant. Although Trooper Achinger testified that Defendant's "choppy" turn and offensive hand gesture alone did not give him reason to stop Defendant's vehicle, the trial court found that "the flipping of the bird is one of several [facts] that [Trooper Achinger] relied upon and I understand that. If [Defendant] were charged with flipping a bird, he would be guilty beyond a reasonable doubt of stupidity more than anything." The trial court noted, however, that the gesture was "free speech." Whether the hand gesture is "free speech" is not really relevant in this case. The hand gesture was not a "specific and articulable fact" upon which reasonable suspicion of any crime could be based in this case.

In conclusion, having reviewed the testimony of Trooper Achinger and the video recording in this case, we conclude that the evidence preponderates against the trial court's finding that Trooper Achinger did not have reasonable suspicion sufficient to justify a stop of Defendant. Accordingly, we reverse the judgment of the trial court and remand for further proceedings in the trial court.

_____
THOMAS T. WOODALL, PRESIDING JUDGE

7